# EXHIBIT A

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200002371
Transaction ID: 0011212028
Filing Date: 07/07/2020 03:11:22 PM CDT

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| MED-DEN FUNDING, LLC, | ) | |
| | ) | Case No. CI 20- |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| JONATHAN M. ABENAIM; JONATHAN | ) | |
| DENTAL SPA AT THE CENTER FOR | ) | |
| COSMETIC & IMPLANT DENTISTRY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, Plaintiff Med-Den Funding, LLC, d/b/a Proceed Finance, through undersigned counsel, and for its Verified Complaint against Defendants Jonathan M. Abenaim and Jonathan Dental Spa at the Center for Cosmetic & Implant Dentistry, LLC, hereby states as follows:

### PARTIES

1.      Plaintiff Med-Den Funding, LLC, d/b/a Proceed Finance ("Proceed Finance") is a Nebraska limited liability company which offers affordable patient financing to help medical providers expand their patient base and drive repeat business.

2.      Defendant Jonathan M. Abenaim ("Abenaim") is a dentist and a resident of New Jersey.

3.      Upon information and belief, Abenaim is the managing member of Defendant Jonathan Dental Spa at the Center for Cosmetic & Implant Dentistry, LLC ("Jonathan Dental Spa"), a New Jersey limited liability company (Abenaim and Jonathan Dental Spa are referred to collectively hereinafter as "Defendants").

1

## JURISDICTION AND VENUE

4.     Subject matter jurisdiction is proper in this Court under Neb. Rev. Stat. § 24-302 as this Court has general civil jurisdiction over this matter.

5.     Defendants have consented to personal jurisdiction in this Court by entering into an agreement with Proceed Finance which contains a binding forum selection clause placing jurisdiction in this Court for any disputes arising out of the agreement or any transactions contemplated by the agreement.  Further, Defendants have made defamatory and/or unlawful statements directed at Proceed Finance in the State of Nebraska, which were calculated to harm Proceed Finance's business in Nebraska.  Thus, under Neb. Rev. Stat. § 25-536, Defendants have purposefully availed themselves of Nebraska by seeking to cause tortious injury within the State and should reasonably expect to be haled into Court in Nebraska for causing the harm intended therein.

6.     Venue is proper in this Court under Neb. Rev. Stat. § 25-403.01, as Defendants are nonresidents of the State and have consented to venue within Lancaster County.

## FACTUAL BACKGROUND

7.     Pursuant to a Service Agreement entered into on October 19, 2017, and renewed on May 23, 2018, Proceed Finance agreed to originate, fund, and service unsecured personal loans to patient-borrowers to finance the purchase of services from Abenaim at Jonathan Dental Spa. True and correct copies of the above-referenced agreements (the "Service Agreement") are attached hereto as **Exhibit A** and are incorporated herein.

8.     Under the Service Agreement, Defendants were to administer and assist in the origination of loans for Defendants' patients to utilize in paying for Defendants' dental services.

9.     As Defendants are the only parties with personal contact with patients who would seek funding, and in the best position to verify information, Defendants are responsible under the

2

Service Agreement for utilizing commercially reasonable efforts to ensure the accuracy and completeness of all information, documents, statements, consents, and other information obtained and submitted in an application for funding. *See* **Exhibit A**, Article V, ¶ 2. Defendants further warranted and covenanted to make commercially reasonable efforts to ensure that all information provided to Proceed Finance is not misleading or fraudulent. *Id.*

10.     Under the Service Agreement, Defendants do not guarantee payment by patients to Proceed Finance, or in any manner guarantee the ability of patients to pay. Proceed Finance cannot, and does not, attempt to recover from Defendants (or other providers) merely because a patient has defaulted in their loan obligations.

11.     The Service Agreement provides that Defendants will reimburse, indemnify, defend, and hold Proceed Finance harmless from any losses arising from, related to, caused by, or otherwise resulting from the fraud, gross negligence or willful misconduct or omissions of Defendants or the breach of Defendants' representations, warranties, covenants, agreements or obligations, or the falsification of information by Defendants. *See* **Exhibit A**, Article VI.

12.     Proceed Finance includes the above-referenced indemnification provision as Proceed Finance is not able to independently verify patient information for loans originated across the country, whereas Defendants are meeting in-person with the patient and are already obtaining their information in order to render their services. Defendants are in the best position to obtain and verify the patient information. This is similar to many other companies' arrangements wherein independent providers obtain and transmit applications for the provider's services, such as car dealerships which collect and transmit information for manufacturers' financing.

13.     On or about May 3, 2019, Proceed Finance brought suit against Jonathan Dental Spa in the County Court of Douglas County for failing to accurately and truthfully gather and

forward financial information of patients, thereby fraudulently inducing Proceed Finance to approve loans and pay proceeds thereof to Jonathan Dental Spa it would not have, had it had the benefit of accurate and truthful information.  *See* County Court of Douglas County, *Med-Den Funding, LLC, vs. Jonathan Dental Spa, LLC*, CI 19-9850 (the "Douglas County Suit").  The Douglas County Suit seeks damages in excess of $21,275.00.

14.     A similar suit was brought in the County Court of Lancaster County on June 11, 2020.  *See* County Court of Lancaster County, *Med-Den Funding, LLC vs. Jonathan Dental Spa, LLC*, CI 20-5981 (the "Lancaster County Suit").  The Lancaster County Suit seeks damages in excess of $19,147.50.

15.     Neither the Douglas County Suit nor the Lancaster County Suit are based on a patient's default on a loan, but rather on the violations of Defendants, which fraudulently induced Proceed Finance to originate loans it would not have originated if it had the benefit of accurate and truthful information.

16.     On May 14, 2020, Abenaim made a series of false, defamatory, and disparaging posts regarding Proceed Finance on social media pages, referencing his relationship with Proceed Finance through Jonathan Dental Spa.

17.     Abenaim posted to his personal Facebook profile[1] that dentists should "beware" of Proceed Finance, and falsely stated that Proceed Finance will sue dentist providers if a patient defaults on their loan.  A true and correct copy of this post is attached hereto as **Exhibit B** and is incorporated herein.  Abenaim's post further states that Proceed Finance is not honest, and that the

---

[1] Defendant's post is public such that anyone may see his post, without having to be friends with Defendant on Facebook.

company is "probably going under."  Abenaim ends his post by stating that companies like Proceed Finance are dangerous.

18.     Abenaim further posted the above-referenced post in a private Facebook group named "3shape Trios Medit/Exocad Club."  A true and correct copy of this post is attached hereto as **Exhibit C** and is incorporated herein.  This group has over 6,000 members, and Abenaim is listed as an administrator for the group.  The group appears to be directed at various professionals within the dentistry industry.[2]

19.     Within the comments to Abenaim's post reflected in **Exhibit B**, Abenaim states that his "main goal is to make sure no other dentist uses [Proceed Finance] again."  A true and correct copy of this comment is attached hereto as **Exhibit D** and is incorporated herein.

20.     Abenaim additionally publicly posted to his personal Twitter account the same posts as reflected in **Exhibit B**.  A true and correct copy of these Twitter posts are attached hereto as **Exhibit E** and are incorporated herein.

21.     Further, Abenaim made two Twitter posts "tagging" Nebraska Attorney General Doug Peterson and Nebraska Governor Pete Ricketts, stating that the Attorney General's Office needed to investigate Proceed Finance for "gouging" and "strong arming" its clients, and for "shady dealing and cheating" people out of loans.  A true and correct copy of these tags are attached hereto as **Exhibit F** and are incorporated herein.

22.     Another post has been identified within the private Facebook group "The Business of Dentistry."  Within this group, a dentist posts a photo from Abenaim showing Abenaim holding the summons from the Lancaster County Suit.

---

[2] *See, e.g.*, https://www.3shape.com/en/our-story (describing 3shape as a company which develops technology for "both dental professionals and patients"); https://www.medit.com/about-us (describing Medit as a company which specializes in "3D measurement and CAD/CAM solutions for dental clinics and labs"); https://exocad.com/company/about-us (describing exocad as a "dental CAD/CAM software company").

23.    Within the above-referenced post, the dentist republishes the false statement reflecting what he evidently gleaned from Abenaim's post in that "[e]vidently Proceed Finance has a clause in their contract that allows the [sic] to sue YOU if a patient defaults."  A true and correct copy of this post is attached hereto as **Exhibit G** and is incorporated herein.

24.    The post reflected in **Exhibit G** is further evidence that Abenaim is spreading his false and disparaging message in multiple forums, and that dentists receiving the message are clearly interpreting the message in a false and disparaging manner.

25.    All statements detailed above are still present as of the date of filing this Complaint.

26.    Proceed Finance has confirmed that at least one dentist provider has ceased doing business with Proceed Finance, as a direct result of seeing Defendants' statements.

27.    Upon information and belief, Defendants have made additional false, defamatory, and disparaging statements regarding Proceed Finance through mediums and in instances other than those specified above.

28.    Upon information and belief, additional dentist providers have ceased doing business with Proceed Finance, or will imminently do so, as a direct result of seeing Defendants' statements.

## FIRST CAUSE OF ACTION:
## DEFAMATION

29.    Plaintiff incorporates Paragraphs 1-28 as if fully set forth herein.

30.    Various statements made by Defendants in **Exhibits B-F** are false and defamatory. Defendants published such statements to third persons, including, but not limited to, groups of dentists and the general public at large.

31.     In particular, Defendants' statements regarding Proceed Finance lying to customers, not being honest with its loans, and allegations that Proceed Finance is "going under" disparage and defame Proceed Finance in its business reputation and its creditworthiness.

32.     Such statements assert demonstrably false factual allegations as Proceed Finance does not provide false information regarding its services and the company is financially-sound.

33.     Further, Defendants' allegations regarding Proceed Finance "gouging" and "strong arming" its customers directly impute to Proceed Finance the commission of baseless criminal acts.

34.     Such statements assert demonstrably false factual allegations as all transactions with Procced Finance's customers are transparent, voluntary, and performed at arms-length, nor does Proceed Finance engage in any criminal activity in performing its services.

35.     All of the above statements by Defendants are defamatory *per se*, and Defendants had no privilege to make such statements.

36.     To the extent any statements of Defendants are not defamatory *per se*, they are defamatory *per quod* considering the broader context of Defendants' comments which generally suggest underhanded or criminal conduct by Proceed Finance, and were made to, *inter alia*, groups which Defendants knew to include dental professionals.

37.     When Defendants published such false and defamatory statements about Proceed Finance, they knew they were false or acted in reckless disregard as to the falsity of such statements.

38.     As a result of Defendants' false, disparaging, and defamatory statements, Proceed Finance has suffered specific damages as a result of harm to its business reputation and lost business, in an amount to be determined at trial.

39.     As a result of Defendants' false, disparaging and defamatory statements, Proceed Finance has suffered general damages as a result of harm to its business reputation, in an amount to be determined at trial.

40.     On June 3, 2020, in compliance with Neb. Rev. Stat. § 25-840.01, Proceed Finance sent a Cease and Desist & Retraction Demand to Abenaim, specifically identifying Defendants' false, disparaging, and defamatory statements, referencing applicable Nebraska law, and demanding retraction of such statements and publication of corrections under Nebraska statute. A true and correct copy of this Demand is attached hereto as **Exhibit H** and is incorporated herein.

41.     Abenaim received the Demand on June 9, 2020. A true and correct copy of the United States Postal Service delivery confirmation for the above-referenced Demand is attached hereto as **Exhibit I** and is incorporated herein.

42.     As of the date of filing this Complaint, Defendants have not responded to this Demand, and have not complied with their statutory duty to retract their statements or publish appropriate corrections.

43.     Defendants have failed to retract their statements and publish appropriate corrections within three weeks of receipt of Proceed Finance's Demand, as required by Neb. Rev. Stat. § 25-840.01. Accordingly, Proceed Finance is entitled to general damages for Defendants' false and defamatory statements.

WHEREFORE, Plaintiff Med-Den Funding LLC respectfully requests that this Court enter judgment in its favor and against Defendants Jonathan M. Abenaim and Jonathan Dental Spa for general and specific monetary damages in an amount to be proven at trial due to Defendants' false and defamatory statements, for temporary and permanent injunctive relief to order Defendants to remove all false and defamatory statements, to publish corrections regarding Defendants' false and

defamatory statements, to stop Defendants' continued false and defamatory statements, and to award Proceed Finance all interest, costs, and attorneys' fees as allowed by law, together with such further relief that is equitable and just.

**SECOND CAUSE OF ACTION:**
**TORTIOUS INTERFERENCE WITH BUSINESS**
**RELATIONSHIP OR EXPECTANCY**

44.     Proceed Finance incorporates Paragraphs 1-43 as if fully set forth herein.

45.     Proceed Finance has valid business relationships, expectancies, and/or opportunities with its current dentist provider clients and prospective dentist provider clients.

46.     Based on Defendants' own contractual relationship with Proceed Finance, and their statements expressing an intent to make sure no "other dentist" did business with Proceed Finance, Defendants were and are aware that Proceed Finance has valid business relationships, expectancies, and/or opportunities with its current dentist provider clients and prospective dentist provider clients.

47.     Defendants committed unjustified and improper interference with Proceed Finance's valid business relationships, expectancies, and/or opportunities with its current dentist provider clients and prospective dentist provider clients when they published false and disparaging statements, as described above, regarding Proceed Finance's business, honesty, and creditworthiness.

48.     Such interference was intentional on Defendants' part, as specifically acknowledged in their statement that they intended to make sure no other dentist did business with Proceed Finance again, and as evidenced by their posting such comments to Facebook groups specifically targeted towards dental professionals.

49.     As a direct result of Defendants' unjustified interference, Proceed Finance has lost business from dentist providers who have seen Defendants' statements.  A true and correct copy

9

of a comment by a dentist who stated he was "just about to sign up" with Proceed Finance prior to seeing Defendants' posts is attached hereto as **Exhibit J** and is incorporated herein.

50.     Upon information and belief, additional such examples exist wherein Proceed Finance has lost business as a result of Defendants' statements.

51.     As a direct result of Defendants' unjustified interference, Proceed Finance stands to imminently lose additional business from dentist providers who have seen Defendants' statements.

WHEREFORE, Plaintiff Med-Den Funding LLC respectfully requests that this Court enter judgment in its favor and against Defendants Jonathan M. Abenaim and Jonathan Dental Spa for general and specific monetary damages in an amount to be proven at trial due to Defendants' tortious conduct, for temporary and permanent injunctive relief to order Defendants to remove all tortious statements and to stop Defendants' continued tortious statements, and to award Proceed Finance all interest, costs, and attorneys' fees as allowed by law, together with such further relief that is equitable and just.

### THIRD CAUSE OF ACTION:
### DECEPTIVE TRADE PRACTICES ACT

52.     Proceed Finance incorporates Paragraphs 1-51 as if fully set forth herein.

53.     The Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat § 87-302, provides in part as follows:

> 87-302. Deceptive trade practices; enumerated.
>
> (a)     A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:
>
> . . . .
>
> (9)     Disparages the goods, services or business of another by false or misleading representations of fact.

54.     Defendants are persons for purposes of the Deceptive Trade Practices Act as Abenaim is an individual and made his statements in connection with a business transaction between Proceed Finance and Abenaim's LLC, Jonathan Dental Spa.

55.     Jonathan Dental Spa is a business that had a contractual relationship with Proceed Finance, and whose member is now disparaging the business of Proceed Finance based on this transaction.

56.     Defendants have disparaged the services and goods of Proceed Finance through numerous specific, documented, false and misleading representations of fact as set out within this Complaint and its exhibits.

57.     Defendants disparaged the services and goods of Proceed Finance in the course of their business, vocation or occupation.  Defendants engaged in the business, vocation or occupation of dentistry and in the receipt of loan financing arrangements for use by Defendants' patients to pay for Defendants' dental services.  Defendants' false, defamatory and disparaging statements, as detailed herein, relate to Procced Finance's provision of services to Defendants' business.

58.     The false representations of fact by Defendants constitute violations of the aforesaid sections of the Deceptive Trade Practices Act and should be enjoined under Neb. Rev. Stat. § 87-303.

59.     Proceed Finance has brought this claim within four years of the violations by Defendants and will provide the Nebraska Attorney General with a copy of this Complaint by certified mail within seven days from the date of filing.

60.     The deceptive trade practices of Defendants were conducted in whole or in part within the State of Nebraska against residents or nonresidents of this state.

11

61.     Under Neb. Rev. Stat. § 87-303(b), Proceed Finance is entitled to costs and attorneys' fees as provided under the Deceptive Trade Practices Act.

62.     Unless Defendants are restrained or enjoined, Defendants will continue to engage in deceptive trade practices as alleged above.

63.     Proceed Finance does not have an adequate remedy at law.  Unless injunctive relief is granted, as requested herein, the damage caused by Defendants will be irreparable.  Under Neb. Rev. Stat. §§ 87-302(c) & 87-303(d), such injunctive remedy is in addition to remedies otherwise available to Proceed Finance.

WHEREFORE, Plaintiff Med-Den Funding, LLC respectfully requests that this Court grant the following relief:

(a)     For its attorneys' fees and other costs related to the prosecution of this Complaint, under Neb. Rev. Stat. § 87-303(b);

(b)     For all general and specific compensatory damages from lost business and harm to Plaintiff's reputation, in an amount to be proven at trial;

(c)     For temporary, preliminary, and permanent injunctive relief against Defendants; and

(d)     Any other and further relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff Med-Den Funding, LLC requests trial by jury of this matter.


DATED: July 7, 2020

MED-DEN FUNDING, LLC,
Plaintiff,

By:     _s/ Quinn R. Eaton_
        Marnie A. Jensen (#22380)
        David A. Lopez (#24947)
        Quinn R. Eaton (#26318)
        HUSCH BLACKWELL LLP
        13330 California St., Ste. 200
        Omaha, NE  68154
        Telephone: (402) 964-5000
        Fax: (402) 964-5050
        marnie.jensen@huschblackwell.com
        dave.lopez@huschblackwell.com
        quinn.eaton@huschblackwell.com

        **Attorneys for Plaintiff**

**EXHIBIT A**

## SERVICE AGREEMENT

This Service Agreement (this "Agreement") is effective as of October 19, 2017 (the "Effective Date"), between Med-Den Funding, LLC, a Nebraska limited liability company (hereafter "Contractor"), and Jonathon Dental Spa , a LLC (hereafter "Provider") (each, individually, a "Party" and, collectively, "Parties").

### RECITALS

WHEREAS, Contractor provides or facilitates certain financing services and coordinates and oversees all parts of the loan and loan process, management, underwriting, and servicing to health care providers;

WHEREAS, Provider is a health care provider;

WHEREAS, Provider desires to retain the services of Contractor and to make available to Provider's patients those certain financing services offered by Contractor; and

WHEREAS, Contractor and Provider are desirous of documenting the terms and conditions of said relationship;

NOW, THEREFORE, in consideration of the above mentioned premises and the mutual covenants and agreements set forth herein, the Parties agree as follows:

### TERMS

## ARTICLE I - DEFINITIONS AS USED IN THIS AGREEMENT

When used in this Agreement, the following capitalized terms shall have the following meanings:

1. "Application" shall mean the application submitted by Patient or Borrower in order to obtain a loan in the Financed Amount;

2. "Borrower" shall mean any individual submitting or cosigning an Application for the Financed Amount on behalf of a Patient, including Patient if appropriate;

3. "Contractor Payment" shall mean the portion of the Financed Amount directly payable to the Contractor pursuant to the terms as set forth on Exhibit A;

4. "Financed Amount" shall mean the amount of the loan proceeds funded by a Third Party Lender;

5. "Financial Information" shall mean all financial information relevant to the determination by a Third Party Lender of whether to enter into a loan agreement for the Financed Amount, whether relating to the financial condition of the Patient or the Borrower;

6. "Loan Payment" shall mean the scheduled repayment of the Financed Amount pursuant to the loan terms;

7. "Patient" shall mean the individual to whom Services are being provided by Provider;

8. "Patient Down Payment" shall mean the amount paid directly to Provider by Patient, Borrower, or other third party, for the Services, which amount is not financed;

9. "Provider Payment" shall mean the amount of the Financed Amount minus the Contractor Payment, which sum shall be paid directly to the Provider as provided herein;

21C723805



10. "Services" shall mean those health care goods, treatments or procedures being provided by Provider to Patient;

11. "Third Party Lender" shall mean any financial institution with whom Contractor enters into an agreement for the provision of the Financed Amount to any Patient, or Borrower on Patient's behalf, for Services to be provided by Provider, and/or related services, collection and other services, and shall, by definition, include any underwriters and servicers of the loan represented by the Financed Amount.

All other capitalized terms shall have the meaning provided in this Agreement.

## ARTICLE II – APPLICATION, APPROVAL AND FUNDING

1. Services - Contractor will coordinate the use of one or more Third Party Lenders to make and/or service loans to Patients and/or Borrowers, to handle collections and to provide related services. The services hereunder are non-recourse for the Provider, meaning that Contractor will not seek repayment from the Provider if the Borrower fails to repay the loan.

2. Provider Duties - Provider shall, and shall cause its employees and/or agents, to (a) participate in the Training Program(s) provided by Contractor and/or Third Party Lender as described herein; (b) assist potential Patients and/or Borrowers with the gathering and entering of the Financial Information into the designated system in order for the Contractor and the Third Party Lender to determine whether such Patient or Borrower qualifies for a loan; (c) make available to the Patient and/or Borrower any disclosures and other documentation, including as may be required by applicable law, as provided by the Contractor or a Third Party Lender, in accordance with and in the manner specified by any instructions provided by Contractor or such Third Party Lender to Provider, prior to Patient or Borrower agreeing to take out such loan and with respect to Patient or Borrower entering into such loan; (d) comply with any other policies and procedures of Contractor and any Third Party Lender which may be changed from time to time upon written notice to Provider; and (e) notify Contractor, within twenty-four (24) hours, of any refund agreements with Patient or Borrower and the terms of such refund.

3. Underwriting - Contractor and its Third Party Lender will establish the underwriting standards for the loans to be made hereunder in their sole and absolute discretion. If a Patient or Borrower does not meet such standards, the Patient or Borrower will not be eligible for a loan. Nothing contained herein obligates Contractor to coordinate the making of any loans.

4. Down Payment - The Patient Down Payment will be made directly to and retained by the Provider, and Contractor and Third Party Lender shall have no responsibility, obligation, duty, or liability related to or arising out of the Patient Down Payment.

5. Loan Terms - The terms of any loan hereunder, including but not limited to interest rates, repayment periods and monthly payments, shall be at the sole and absolute discretion of Contractor and Third Party Lender.

6. Financed Amount - As coordinated by Contractor, for any loans made under this Agreement, a Third Party Lender will provide the Financed Amount. The Financed Amount shall be paid directly to the Provider. Contractor agrees that it will make reasonable arrangements so that Provider will not receive payment (except for the Patient Down Payment) directly from the Borrower or fund any loan amount to the Borrower. In the event a Borrower inadvertently sends a Loan Payment to Provider, Provider agrees to forward said Loan Payment to Contractor or Third Party Lender, as directed by Contractor, within three (3) business days of receipt.

7. Disbursement - Provider agrees that the Financed Amount will be deposited by Third Party Lender into an account held in the name of Provider ("Provider's Account") within approximately two (2) or three (3)

21C723805                                          2

business days of completion of the loan process, via ACH. Concurrently, Third Party Lender will withdraw from Provider's Account the Contractor Payment and transfer the Contractor Payment to Contractor. Provider will complete and execute any documents, agreements, instruction, or otherwise, that are reasonably necessary to permit and enable Third Party Lender to perform the procedures set forth in this Article II, Section 7, and will use commercially reasonable efforts to honor more specific payment instructions (i.e., change in deposit account or payee) as needed, if requested in advance. In the event that the Third Party Lender deposits the Financed Amount into the Contractor's account, Contractor shall transfer the Provider Percentage to Provider within approximately three (3) business days of said deposit.

## ARTICLE III – REFUNDS AND CANCELLATIONS

1    Provider agrees to establish an official written policy regarding refunds that is reasonable and proportional to services rendered where applicable, and refunds are to be given to a Patient, Borrower, or other third party, as appropriate, only in accordance with said policy and this Article III, Section 1. Provider will notify Contractor, within twenty-four (24) hours, of any agreement to refund money to a Patient or Borrower and the terms of any such agreement. Refunds will be processed promptly and electronically by ACH consistent with this Article III and Provider's written refund policy. In the event of a refund.

　　a.   Provider and Contractor shall repay to Third Party Lender, on a pro rata basis determined by the ratio of Provider Payment to Contractor Payment, the full amount of the refund (in which case the Financed Amount shall be reduced accordingly) as shown in the example on Exhibit B.

　　b.   In the event that the refund exceeds the total sum of the Financed Amount, any additional refund shall be paid to Patient or Borrower by Provider from the Provider Down Payment.

　　c.   Any repayments to the Third Party Lender pursuant to this Section shall be initiated by Contractor and Provider within three (3) business days of the notice to Contractor of the refund agreement with Patient or Borrower as applicable. Such repayments shall be credited according to the Third Party Lender's standard processes. The Parties agree that the refund does not impact Borrower's obligations to the Third Party Lender except as specifically set forth herein.

2    Notwithstanding any provision contained herein to the contrary, in the event that the Services, or any portion of the Services, are not commenced by Provider within thirty (30) days of the disbursement to Provider of the Financed Amount, Provider shall promptly notify Contractor of same, and consistent with Provider's written refund policy and this Article, Provider and Contractor shall refund the portion of the Financed Amount to Third Party Lender which is commensurate with the Services or portion of the Services not so commenced, and Provider shall refund to the Patient any portion of the Patient Down Payment commensurate with the Services or portion of the Services not so commenced.

3    Under no circumstances shall Contractor be responsible or liable to Provider, Patient, Borrower, or any other third party, for any refund amount exceeding the Contractor Payment.

## ARTICLE IV – CONTRACTOR REPRESENTATIONS, WARRANTIES AND COVENANTS

1    With respect to the services provided hereunder, Contractor warrants that it complies with all applicable federal and state laws and regulations, such as for lending and consumer financing, utilizes only lenders and servicers that are licensed and otherwise authorized to conduct business in each state where Provider seeks the services of Contractor.

2.    Contractor agrees to make available to Provider information sufficient to support customer service needs, such as date and status of application, amount and date of loan distribution and loan documents, provided that such disclosures would be legally permissible and if allowed by the Third Party Lender.

21C223805                              3

## ARTICLE V – PROVIDER REPRESENTATIONS, WARRANTIES AND COVENANTS

1. After due and diligent investigation and inquiry, Provider represents and warrants to Contractor that each of the following representations and warranties contained in this Article V, Section 1 are and remain true and accurate, and shall remain true at the date of funding of any Financed Amount, as follows:

    a.   Provider is duly organized, validly existing, and in good standing under the laws of the state of its organization and it and its employees and agents providing the Services have all qualifications, registrations, licenses and permits necessary to carry on its business and provide the Services in each state in and from which Provider conducts business activities; to the best of its knowledge, Provider has conducted business in full compliance with all applicable federal, state, and local laws, rules, ordinances, and regulations, including, but not limited to, the requirements of any agency that regulates Provider, including but not limited to with respect to the Services; and any information provided by Provider to Contractor or a Third Party Lender regarding its business is accurate and complete.

    b.   Provider and the signatory to this Agreement have the full legal authority to bind themselves to all obligations, representations, warranties and covenants set forth in this Agreement and Provider has full legal authority to bind Provider and its employees, agents, and representatives to the obligations, representations, warranties and covenants set forth in this Agreement

    c.   No approval of the transactions contemplated by this Agreement from any entity, public or private, or any regulatory authority having jurisdiction over Provider is required, or if required, such approval has been obtained. There are no actions or proceedings pending affecting Provider which would adversely affect Provider's or its employees' or agents' ability to perform hereunder or to provide the Services.

    d.   The provision of Services and consummation of the transactions contemplated by this Agreement are in the ordinary course of business of Provider and will not result in: (a) a breach of any term or provision of the charter, bylaws, or other governing document of Provider or document authorizing Provider to do business; (b) breach of any term or provision of, or conflict with, or constitute a default under any agreement to which Provider or its property is subject; or (c) the violation of any law, rule, regulation, order, judgment, or decree to which Provider or its property is subject

    e.   Provider shall at all times referred to herein maintain a policy or policies of professional liability (malpractice) insurance in an amount commensurate with the risk involved in the Services, covering Provider and all employees and agents providing such Services. Provider shall immediately notify, or cause its insurance carrier to immediately notify, Contractor in the event of cancellation or suspension of such insurance for any reason.

    f.   There is no claim, litigation, investigation or proceeding pending or threatened against or otherwise materially adversely affecting Provider's business, performance of its obligations under this Agreement, Provider's or its employees' or agents' provision of the Services or the validity or enforceability of this Agreement and Provider has no knowledge of any circumstance indicating that any such claim, suit, investigation or proceeding is likely or imminent

2. After due and diligent investigation and inquiry, Provider further represents and warrants to Contractor that as of the date of funding of each Financed Amount that for each such funding

    a.   Except for coordination functions performed by Contractor, Provider is the sole originator and has the authority to refer any Application on the terms herein set forth; there has been no assignment, sale or pledge thereof by Provider; and as of the date of the funding of the Financed Amount, each funding will be free and clear of claims or encumbrances of any type

21C723805                                                          4

b. All persons who render the Services are qualified to do so under any applicable licensing requirements and all equipment used by such persons is approved by each and every agency that has the authority or discretion to render such approval and there are no pending or past criminal charges against any such person that in any way relates to the provision of the Services.

c. No representation, warranty, or written statement made by Provider in this Agreement, nor any Application, documentation, schedule, exhibit, statement, or certificate furnished to Contractor by Provider or its employees or agents in connection with entering into this Agreement or in connection with any loan contains any untrue statement or omission of material fact which could render such statement misleading. In the event that Provider, its employees, agents or representatives, assist Patient, Borrower or other third parties in completing and submitting an Application, to the best of Provider's knowledge, all information contained in each Application is true, complete and accurate, and there are no facts not set forth in the Application that Provider, its employees, agents or representatives believes Contractor or the Third Party Lender might reasonably consider to be adverse to the approval of the funding of the Financed Amount.

d. Each and any referral of an Application by Provider to Contractor has been duly authorized, valid and sufficient, and all consents and approvals required for such referral have been obtained.

e. All documents prepared at the request of Contractor or a Third Party Lender by Provider or Provider's employees, agents or representatives are genuine, accurate, and complete and all signatures thereon are genuine or authorized to the best of Provider's knowledge.

f. That each Borrower signatory is of legal age and competent to contract at the time of execution and is not under duress.

g. All of Provider's employees, agents or representatives who assist the Borrower(s) in preparing or submitting an Application have completed the Training Program, have been certified or recertified, and, at the time of the funding of the Financed Amount, are duly certified pursuant to said Training Program.

3. Provider represents and warrants at all times and to all persons that it and its employees and agents will accurately represent the terms and conditions of the financing available hereunder as established by Contractor and Third Party Lender(s) from time to time.

4. Provider, as indicated below, covenants and agrees with Contractor as follows:

a. Provider shall notify Contractor immediately of any material changes in its ownership address, principal management, or insolvency proceeding, including but not limited to bankruptcy, whether voluntary or involuntary, receivership, or dissolution proceedings, as applicable, and, upon request by contractor at any time, Provider shall deliver to Contractor or Third Party Lender evidence of the financial condition of Provider in a format acceptable to Contractor. Provider shall also provide any additional information reasonably requested by Contractor or Third Party Lender from time to time, including but not limited to, proof of adequate licensing, bonding, and insurance of Provider, and its employees and agents.

b. To the extent permissible under applicable law, Provider shall promptly notify contractor of any claim or complaint asserted by any Patient or Borrower or other person that arises out of the conduct of Provider or any of its employees, agents, or representatives, or use of any equipment in connection with Services

21C723805                                          5

c.   Provider shall not discourage Applications for credit or otherwise discriminate on the basis of the Patient's or Borrower's, or prospective Patient's or Borrower's, race, gender, or membership in any other protected class.

d.   Upon the request of Contractor, Provider shall promptly deliver evidence, in a reasonable form satisfactory to Contractor, of compliance with federal, state, and local laws, rules, and regulations, including, but not limited to, copies of any notice or disclosure form furnished to Patients or Borrowers.

e.   Provider shall maintain a complete set of records of all business activities conducted by Provider pursuant to this Agreement. Contractor and Third Party Lender, their duly authorized employees, agents, or representatives, and federal and state regulatory agencies which supervise Contractor and Third Party Lender, shall have a right, upon reasonable notice, to audit, inspect and copy any of the foregoing records, reports, files, claims and complaints and related materials of the Provider and Provider shall cooperate and assist in any such audit or inspection.

f.   All of Provider's employees, agents or representatives who assist the Borrower(s) in preparing or submitting an Application have completed the Training Program, have been certified or recertified, and, at the time of the funding of the Financed Amount, are duly certified pursuant to said Training Program.

g.   Provider agrees that it will cooperate with any request for documents or examination by a regulatory body or other governmental entity with supervisory authority over Provider, its licensed professional(s), Contractor, or a Third Party Lender provided that such actions would not violate any applicable law.

h.   Provider agrees to comply with all laws and regulations, including but not limited to the Health Insurance Portability and Accountability Act of 1996, as amended, the Gramm-Leach-Bliley Act, as amended, and the Equal Opportunity Credit Act.

## ARTICLE VI - INDEMNIFICATION

1.   Provider shall reimburse, indemnify, defend and hold harmless Contractor, all applicable Third Party Lenders, and each of their affiliates and each of their respective directors, officers, stockholders, members, partners, owners, managers, employees, agents, attorneys and representatives from and against any and all claims, losses, causes of action, fines, penalties, liabilities or damages and reasonable attorneys' fees and court costs, (collectively, "Damages") incurred or suffered by such indemnified party arising from, related to, or in connection with (i) the negligent or willful conduct or omissions of Provider, its employees, agents, or representatives; (ii) the falsification of information by Provider, its employees, agents, or representatives; (iii) the material breach of Provider's representations, warranties, covenants, agreements or obligations hereunder; (iv) advertising of Contractor's or Third Party Lender's services that is not authorized by Contractor; (v) personal injury, medical malpractice or other claim resulting from the Provider's or its employees', agents' or representatives' performance of the Services, (vi) personal injury or property damage caused by Provider's or its employees', agents' or representatives' performance of Services or its obligations hereunder; (vii) the submission and/or approval of any Application; (viii) the funding of any Financed Amount, as a result, either in whole or part, of the failure of Provider, its employees, agents or representatives, to comply with the procedures set forth in the Training Program or other policies and procedures provided by Contractor or Third Party Lender to Provider; and (ix) the infringement or misappropriation of any third parties' intellectual property or other proprietary rights by Provider or Provider's employees, agents or representatives.

2.   Contractor shall indemnify, defend and hold harmless Provider, and its directors, officers, stockholders, members, partners, owners, managers, employees, agents, attorneys and representatives, from and against any and all Damages incurred or suffered by such indemnified party arising from, related to, or in connection with

21C723805                                                   6

the material breach of Contractor's representations, warranties, covenants, agreements or obligations hereunder.

## ARTICLE VII – MISCELLANEOUS PROVISIONS

1    Termination; Suspension - This Agreement may be terminated under the following circumstances

   a.  Non-approval: In the event a Third Party Lender requires that Provider be approved prior to funding loans (or continuing to fund loans) and such Third Party Lender does not approve Provider (or re-approve Provider), this Agreement shall automatically terminate

   a.  For Cause: In the event of a breach by Provider of any provision of this Agreement, Contractor may terminate this Agreement immediately upon written notice. Notwithstanding the foregoing, a cure period of not more than ten (10) business days after receipt of written notice shall apply to a breach by Provider resulting from a failure to pay an amount due to Contractor as Contractor Payment. In the event of a breach by Contractor of any provision of this Agreement, Provider may terminate this Agreement upon written notice, provided that such breach is not cured, if subject to cure, within thirty (30) days' of notice of such breach

   b   Without Cause: Either Party to this Agreement may terminate said Agreement upon written notice, for any reason or no reason, provided such notice is not less than thirty (30) days prior to the effective date of termination. Notwithstanding anything herein to the contrary, Contractor may suspend or terminate the provision of loans hereunder without notice and at any time without liability to Provider, and Contractor may terminate this Agreement without notice and without liability to Provider if any of Contractor's agreements with Third Party Lenders terminate for any reason

   c   Any voluntary or involuntary bankruptcy or insolvency by either Party shall be considered an immediate termination event and shall result in the immediate termination of this Agreement

   d   If a regulatory agency determines or Contractor or a Third Party Lender reasonably believes that the lending, financing, or other services arranged for and/or provided by Contractor or a Third Party Lender are not in compliance with applicable laws for any reason, Contractor may suspend the processing of new loans until such non-compliance has been remedied or may immediately terminate this Agreement upon written notice to Provider

   e   If a regulatory agency determines or Contractor or a Third Party Lender reasonably believes that Provider's pricing or other practices are not in compliance with consumer lending or other applicable laws or policies or procedures provided by Contractor or a Third Party Lender, Contractor may suspend the processing of new loans until such non-compliance has been remedied or may immediately terminate this Agreement upon written notice to Provider. In such event, and if requested by Contractor or a Third Party Lender, Provider agrees to work with Contractor and Third Party Lender in good faith to remedy such non-compliance.

   f.  Contractor or a Third Party Lender shall not be liable for (i) any violations of consumer lending laws or other applicable laws to the extent caused by Provider or its employees', agents' or representatives' deviation from instructions, policies or procedures provided by Contractor or Third Party Lender or material modification or packaging of Contractor's or Third Party Lender's service or product offerings, or (ii) any incorrect or incomplete information in an Application.

2.    Confidential Information; Intellectual Property -

   a   Each party (the "Disclosing Party") may provide the other party (the "Receiving Party") with certain confidential and proprietary information by any method and in any form or format, which

21C723805                                         7

is marked "Confidential," "Restricted," "Proprietary" or with other similar marking, or which should reasonably be considered to be confidential and proprietary information ("Confidential Information") Confidential Information includes, but is not limited to, software or other technology, product specifications and technical data, product designs/ideas, market/sales forecasts and information, proprietary materials, all business trade secrets, financial and accounting data, business plans, pricing information, policies and procedures, know-how and Non-public Personal Information. For purposes of this Agreement, Contractor's Confidential Information includes the Training Program and any Confidential Information of a Third Party Lender. However, "Confidential Information" does not include information that: (i) is publicly known at the time of its disclosure; (ii) is lawfully received by the Receiving Party from a third party not under an obligation of confidentiality to the Disclosing Party; (iii) is published or otherwise made known to the public by the Disclosing Party; or (iv) was generated independently by the Receiving Party before disclosure by the Disclosing Party "Nonpublic Personal Information" shall include all personally identifiable financial information and any list, description or other grouping of consumers, and publicly available information pertaining to them, that is derived using any personally identifiable financial information that is not publicly available, and shall further include all "nonpublic personal information" as defined by the federal regulations implementing the Gramm- Leach-Bliley Act, as amended from time to time "Personal identifiable financial information" means any information a consumer provides to a Party in order to obtain a financial product or service, any information a Party otherwise obtains about a consumer in connection with providing a financial product or service to that consumer, and any information about a consumer resulting from any transaction involving a financial product or service between a Party and a consumer Personally identifiable information may include, without limitation, a consumer's first and last name, physical address, zip code, email address, SSN, birth date and any other information that itself identifies or when ties to the above information may identify a consumer

b.  The Receiving Party agrees that during the term hereof and for so long as it has such Confidential Information in its possession: (i) it will hold the Confidential Information of the Disclosing Party in the strictest confidence; (ii) it will exercise no less care with respect to the Disclosing Party's Confidential Information than the level of care exercised with respect to its own Confidential Information, but in no event less than reasonable care; and (iii) upon the request of the Disclosing Party, promptly return to the Disclosing Party or destroy all copies of the Disclosing Party's Confidential Information

c.  The Receiving Party will refrain from using the Disclosing Party's Confidential Information for any purpose other than the purpose of this Agreement. The Receiving Party may only disclose the Disclosing Party's Confidential Information to the Receiving Party's officers, directors, key employees and financial and legal advisors who have the need to know such Confidential Information in order for the Receiving Party to perform its obligations under this Agreement. Such persons will be informed of and will agree to be bound by the provisions of this Section, and the Receiving Party will remain responsible for any unauthorized use or disclosure of the Disclosing Party's Confidential Information by any of them. The Receiving Party may also disclose the Disclosing Party's Confidential Information pursuant to the requirement or request of a governmental agency, a court or administrative subpoena or an order or other legal process or requirement of law so long as it shall: (i) first notify the Disclosing Party of such request or requirement; (ii) in the case of a required disclosure, furnish only such portion of the Disclosing Party's Confidential Information as it is advised in writing by counsel that it is legally required to disclose; and (iii) cooperate with the Disclosing Party in its efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to that portion of the Disclosing Party's Confidential Information that is required to be disclosed.

21C723805                                    8

d   All right, title, and interest in and to the software, technology, Training Program, and other intellectual property used to provide the services shall remain the sole and exclusive property of Contractor, Third Party Lender(s) and each of their licensors, as applicable. Provider shall not, and shall not permit any other person or entity to, access or use the software used to provide the services except as expressly permitted by this Agreement and the applicable terms of use. The terms of use for the software are available at https://apply.firstmarkservices.com/FileView/TermsAndConditions and are incorporated herein by reference. For purposes of clarity and without limiting the generality of the foregoing, Provider shall not, except as this Agreement expressly permits, (i) copy, modify or create derivative works or improvements of the software, or (ii) reverse engineer, disassemble, decompile, decode, adapt, or otherwise attempt to derive or gain access to the source code of the software, in whole or in part.

3   Survival Clause - In addition to any provision specifically identified as surviving termination, Article II, Sections 6 (last sentence) and 7, Article III, Article V, Article VI; and Article VII, Sections 2, 3, 4, 8, 9, 10, 12, 14, 19, and 20 shall survive termination of this Agreement.

4   Notice - All notices required or permitted to be given hereunder shall be in writing and shall be considered given and received when (a) personally delivered to the Party, (b) delivered by facsimile to the number set forth below, or (c) deposited in the United States mail, postage prepaid, return receipt requested, properly addressed to a Party at the address set forth below, or at such other facsimile number or address as such Party shall have specified by notice given in accordance with the provisions of this Section. Further, except for notices with respect to Article V, Sections 1(c), 4(a), 3(b), and 4(c), and Article VII, Sections 1 and 2 of this Agreement, the Parties agree that they may exchange notices required or permitted under this Agreement by email to the email address set forth below for such Party (no copy to counsel is required) or other electronic means as set forth below and that any such notices will be effective the business day following the day when such notice is emailed or as otherwise provided below.

CONTRACTOR:                                           PROVIDER:

David Roehr                                           The Practice Address
1230 Aries Dr., Suite C                               On File with Proceed Finance
Lincoln, NE 68512
Facsimile: 402-420-7748
Email: dave@daveroehr.com

Provider agrees that all communications that can be provided by email or other electronic means pursuant to this Section may be made available or provided to Provider via Contractor's website or by email. Provider may also receive a free paper copy by contacting Contractor at the address above.

5.   Insurance - Provider agrees to maintain sufficient insurance coverage to reasonably protect Contractor from any and all liabilities for which Provider has agreed to indemnify and hold harmless Contractor, to the extent such coverage is available.

6   Advertising - Provider shall not refer to Contractor or its specific financing options unless given advance written approval by Contractor; provided however that such approval shall not be required if the communication referring to Contractor or its financing options is a communication with its employees or agents and is not directed (or intended to be directed) toward a consumer audience.

7.   Training Program - Contractor and Third Party Lender shall, from time to time and at its discretion, make training materials available to Provider and each of its employees, agents and representatives who will be assisting Provider's Patients, Borrowers or other third parties in the Application process, which materials shall

21C723805                                    9

collectively be defined as the "Training Program" Provider agrees that it, and each of its employees, agents and representatives who will be assisting Provider's Patients, Borrowers or other third parties in the Application process will participate in training using the materials provided as part of the Training Program, and that each such individual will demonstrate an understanding of and adequate training with regard to said training materials prior to assisting Patients, Borrowers or other third parties in the Application process, as well as obtain a certification, or recertification to be completed biannually, as applicable, of his or her knowledge, understanding and application of the Training Program, as required by Contractor and Third Party Lender.

8.  Use of Name, Mark, and Logo - Neither Party may use the name, mark, or logo of the other Party without advance written approval of the Party whose name, mark or logo is to be used. Provider's execution of this Agreement constitutes written approval that Contractor or its Third Party Lender, if required, may use Provider's name in the consumer loan document application, disclosures, and agreement.

9  Disclaimer of Warranties - Provider shall be solely responsible for the selection and use of telecommunications, internet access, and any other systems and services required to connect to, access or otherwise use the services provided hereunder, including, without limitation, computers, computer operating system and web browser (collectively, the "Equipment") and any charges associated therewith. Contractor and a Third Party Lender shall have no liability with respect to Provider's or its Patient's or Borrower's inability to access or use such services resulting from the Equipment needed to connect to, access or otherwise use such services. Contractor or a Third Party Lender shall have the right to perform scheduled or emergency maintenance with respect to the services provided hereunder that may limit or suspend the availability of the services provided hereunder. NEITHER CONTRACTOR NOR ANY THIRD PARTY LENDER MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING AVAILABILITY, TIMELINESS, OR RESULTS TO BE DERIVED FROM THE SERVICES PROVIDED HEREUNDER, INCLUDING WITH REGARD TO ANY SOFTWARE. THE SERVICES AND ANY SOFTWARE PROVIDED HEREUNDER ARE PROVIDED TO PROVIDER ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT, IN EACH CASE TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

10  Waiver of Consequentials; Limitation of Liability - In no event shall Contractor, Third Party Lender, or any of their affiliates, have any liability, in contract, tort, or otherwise, for any indirect, special, incidental, consequential (including loss of business, profits or data), or punitive damages, arising out of this Agreement or the services provided hereunder, even if Contractor, Third Party Lender or their affiliate has been advised of the possibility of such damages, to the maximum extent permitted by applicable law. Notwithstanding anything to the contrary herein, in no event shall Contractor's, Third Party Lender's, or either of their affiliates' aggregate liability arising out of or related to this Agreement exceed the amount of the Contractor Payment paid to Contractor in the twelve (12) months prior to the event giving rise to the claim.

11. Force Majeure - Neither Contractor nor its affiliates shall be responsible or have any liability for delays or performance failures caused from acts beyond their reasonable control, including but not limited to natural disaster, act of terrorism, Act of God, labor strike or delays by a Third Party Lender.

12. Governing Law; Venue - This Agreement shall be construed in accordance with the laws of the State of Nebraska, without regard to its choice of law provisions. Any legal suit, action or proceeding arising out of this Agreement or the transactions contemplated hereby shall be instituted in the federal courts of the United States of America or the courts of the State of Nebraska in each case located in Douglas County, Nebraska, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party.

23C723805                                    10

13. Severability - If any provisions of this Agreement, as applied to any Party or to any circumstance shall be adjudged by a Court of competent jurisdiction to be void and unenforceable, the same shall in no way affect:

    a.  Any other provision in this Agreement;

    b.  The application of such provision in any other circumstance; or

    c  The validity or enforceability of the Agreement as a whole.

14. Terms Confidential - The Parties agree this Agreement and all the terms and conditions of this Agreement shall be deemed confidential, and they shall not disclose or comment upon them to third parties except: (i) to Third Party Lender; (ii) to accountants, tax preparers, and attorneys as necessary to obtain advice, (iii) as may be required by court order; (iv) as necessary to enforce this Agreement in court, (v) as necessary in response to official government inquiry; or (vi) as agreed by the Parties in writing. The Parties agree that if either Party makes public or discloses to third persons the terms of this Agreement except as set forth herein, the disclosing Party will have breached this Agreement.

15. Counterparts - If applicable, this Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which, taken together, shall be deemed to be one Agreement. Such counterparts may be exchanged by means of electronic mail or facsimile transmission.

16 Costs and Expenses - Each Party shall bear its own costs and expenses incurred in connection with this Agreement and the transactions contemplated herein.

17 Independent Contractors - The Parties are independent contractors of each other. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment, or fiduciary relationship between the Parties. Neither Party, by virtue of this Agreement, will have any right, power, or authority to act or create an obligation, express or implied, on behalf of the other Party.

18. Further Assurances - The Parties shall cooperate fully with each other and execute such further instruments, documents, and agreements, and shall give such further written assurances, as may be reasonably requested by another Party to better evidence and reflect the transactions described herein and contemplated hereby, and to carry into effect the intent and purposes of this Agreement.

19 Cumulative Remedies - The remedies of the Parties hereunder are cumulative and in addition to all rights and remedies at law and in equity.

20. Entire Agreement, No Waiver, Assignment, Third Party Beneficiary - This Agreement, including all exhibits attached hereto and incorporated herein by this reference, is the entire and exclusive statement of the agreement between the Parties, and supersedes and merges all prior proposals, understandings and all other agreements, oral and written, between the Parties, relating to the subject matter hereof. This Agreement shall not be modified or changed in any manner except by a writing signed by the Parties. The waiver or failure of either Party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further right hereunder. This Agreement shall not be assigned by Provider, and any such assignment in violation of this prohibition shall be void ab initio. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their legal representatives, heirs, successors and permitted assigns. The Third Party Lender(s) are third party beneficiaries of this Agreement with regard to Provider obligations

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

Exhibit A.
Calculation of Contractor Payment

| Loan Grade* | Contractor Percentage** (as a percentage of Financed Amount) |
|---|---|
| A | 3.5% |
| B | 4% |
| C | 4.5% |
| D | 5% |
| E | 9.9% |
| F | 14.9% |
| G | 19.5% |

*The loan grade is based on underwriting criteria established by Contractor and the Third Party Lender
**The Contractor Payment for a particular loan shall be calculated based on the loan grade of such loan by multiplying the applicable contractor percentage for such loan grade by the Financed Amount

21C723805

Exhibit B:
Example Refund

Example based on loan grade A, 3.5% contractor percentage

Procedure Cost: $12,500.00
Down Payment: $2,500.00
Bank Loan: $10,000.00
Refund (of total procedure price) Percentage: 40% ($5,000 to be refunded)

Pre Refund:
| | |
|---|---|
| Provider Down Payment from Patient: | $2,500.00 |
| Provider Payment: | $9,650.00 |
| Contractor Payment: | $350.00 |
| | |
| Bank Loan Extended, payable by Patient: | $10,000.00 |
| | |
| Remaining Owed by Patient: | $10,000.00 Plus Interest |

Post Refund:
| | |
|---|---|
| Provider Down Payment Retained: | $2,500.00 |
| Provider Loan Retained: | $4,825.00 |
| Contractor Loan Retained: | $175.00 |
| Total Retained: | $7,500.00 |
| | |
| Provider Down Payment Refunded: | $0.00 |
| Total Repayment to Patient: | $0.00 |
| | |
| Provider Loan Refunded: | $4,825.00 |
| Contractor Loan Refunded: | $175.00 |
| Total Repayment to Bank: | $5,000.00 |
| | |
| Remaining Bank Loan: | $5,000.00 Plus Accrued Interest |
| | |
| Remaining Owing by Patient: | $5,000.00 Plus Accrued Interest |

21C723805

## SERVICE AGREEMENT

THIS SERVICE AGREEMENT (together with all exhibits hereto, this "Agreement") is effective as of ___May 23rd___, 2018 (the "Effective Date") between:

> MED-DEN FUNDING, LLC, a Nebraska limited liability company, doing business as "Proceed Finance" ("Contractor")

> and

> Jonathan Dental Spa, LLC_____ ("Provider").

Contractor and Provider are hereinafter sometimes individually referred to herein as a "party" and collectively as the "parties".

## RECITALS

WHEREAS, Contractor has developed a program whereby certain third party financial institutions ("Lenders") may originate, fund and service unsecured personal loans ("Loans") to Borrowers to finance the purchase of Services from certain providers (the "Program");

WHEREAS, Contractor is authorized to administer and act on behalf of the Lenders in connection with Loans to Borrowers and to assist in the origination of Loans for the benefit of Lenders and the Providers; and

WHEREAS, Provider provides Services to its Patients and desires the ability to participate in the Program on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I – CERTAIN DEFINED TERMS

When used in this Agreement, the following capitalized terms shall have the following meanings:

1. "Application" shall mean the on-line application submitted by Patient or Borrower to Lender via the Portal in order to apply for a Loan.

2. "Borrower" shall mean any individual submitting or cosigning an Application on behalf of a Patient (including Patient, if appropriate) who qualifies for and ultimately receives a Loan in the Financed Amount pursuant to the terms and conditions of the Loan Documents.

3. "Contractor Payment" shall mean the portion of the Financed Amount calculated in accordance with the terms of Exhibit A, paid to Contractor by the Provider in accordance with the provisions in Article II, Section 7 in exchange for Contractor's arrangement of the Loan



EXHIBIT

A

from Lender and oversight of the Third Party Servicer, and the warranties enumerated in this Agreement.

4. "<u>Financed Amount</u>" shall mean the amount of any Loan funded by Lender on behalf of Borrower to Provider hereunder for full or partial payment for the Services received by Patient or Borrower.

5. "<u>Financial Information</u>" shall mean all consumer financial information relevant to the determination by Lender of whether to make a Loan to a Borrower for the Financed Amount, whether relating to the financial condition of the Patient or the Borrower.

6. "<u>Law</u>" shall mean any statute, act, code, law, rule, regulation, order, license, permit, ordinance, decree, ruling, proclamation, resolution, judgment, decision, declaration, or interpretive or advisory opinion or letter of any governmental department, commission, board, bureau, agency, court or other instrumentality of any country, state, province, county, parish, municipality, jurisdiction or other political subdivision thereof.

7. "<u>Loan Documents</u>" shall mean the documents, agreements and instruments entered into between the Lender and Borrower for any Loan of a Financed Amount.

8. "<u>Loan Payment</u>" shall mean any payment by a Borrower in repayment of the Financed Amount to Lender pursuant to the terms and conditions of the Loan Documents, inclusive of principal, interest and any associated fees, charges or indemnities related thereto.

9. "<u>Patient</u>" shall mean the individual to whom Services are provided by Provider.

10. "<u>Patient Down Payment</u>" shall mean the amount (if any) paid directly to Provider by Patient, Borrower, or other third party, for the Services, which amount is not part of the Financed Amount.

11. "<u>Provider Payment</u>" shall mean the amount of the Financed Amount minus the Contractor Payment.

12. "<u>Third Party Servicer</u>" shall mean the third party engaged by Contractor and Lender to service all Loans made by Lender to Borrowers hereunder.

13. "<u>Services</u>" shall mean solely those goods, services, treatments or procedures provided by Provider to Patients in the ordinary course of Provider's business that are the subject of any Loan.

All other capitalized terms shall have the meaning provided to such terms elsewhere in this Agreement.

## ARTICLE II – DUTIES OF THE PARTIES; TRAINING PROGRAM

1. <u>Contractor Duties</u>.  Contractor shall make available Lender's approved web-enabled loan application tool and associated system for collecting and processing Loan requests (the "<u>Portal</u>") to Patients who wish to complete an Application.  Contractor shall also arrange for and coordinate with Third Party Servicer to handle collections of any Loans, including

customer service for both the proper completion of an Application and Loan servicing. Contractor shall, at all times hereunder, perform such services and duties in good faith, in a commercially reasonable manner and in accordance with applicable Law.

2. <u>Training Program</u>. Prior to any Application by a Borrower being submitted to Lender (and as otherwise required or deemed necessary by Contractor or Lender from time to time thereafter), Contractor shall provide one or more training programs (a "<u>Training Program</u>") to Provider, its employees, agents and representatives (the "<u>Provider Staff</u>") who are or are reasonably expected to use the Portal or otherwise communicate or make available information about the Program to Patients. The Training Program will be in the form of an in-person or web-based interactive session and demonstration with materials, including the Contractor's current user manual for the Portal (as the same may be updated from time to time, the "<u>User Manual</u>"). The Training Program will be used to educate and train the Provider Staff on how to support the appropriate use and functionality of the Portal as detailed in the User Manual (the "<u>Approved Procedures</u>"). Upon any modification or update to the User Manual, Contractor shall provide reasonable advance notice and an updated User Manual and/or training session(s) to Provider's Staff as reasonably required to implement the modified process. Any such additional training session(s) will be scheduled and held in coordination with Provider and the applicable Provider Staff. Before Provider Staff will be permitted under the terms of this Agreement to communicate or make available information about the Portal to a prospective Borrower or assist a prospective Borrower in completing and submitting an Application, such Provider Staff must have completed the most current Training Program and must, in Contractor's sole discretion, demonstrate an appropriate understanding of the Approved Procedures.

3. <u>Provider Duties</u>. At all times hereunder, Provider shall, and shall cause its Provider Staff to (i) participate in and complete the Training Program(s) provided by Contractor, (ii) as may be requested by a prospective Borrower, provide ministerial aid in connection with properly completing an Application, (iii) comply with the Approved Procedures (as the same may be changed from time to time by Contractor upon thirty (30) days' advance written notice to Provider), and (iv) notify Contractor and Lender, within five (5) days, of any refund agreements with Patient or Borrower and the terms of such refund or any refund request or cancellation of Services by a Patient. Provider shall, at all times hereunder, perform such services and duties in good faith, in a commercially reasonable manner and in accordance with applicable Law.

4. <u>Underwriting and Lending Decisions</u>. Notwithstanding anything to the contrary contained elsewhere herein, it is expressly understood and agreed that (i) the underwriting standards for any Loans made under the Program shall be in the sole and absolute discretion of Lender, (ii) nothing contained herein obligates either Lender to accept any Application or make any Loans or Contractor to coordinate the making of any Loans or to continue the Program, and (iii) the terms and conditions of any Loan offered to a prospective Borrower shall be in the sole and absolute discretion of Lender and subject to appropriate Loan Documents between Lender and Borrower.

5. <u>Servicing</u>. Third Party Servicer will be responsible for collections and servicing of all Loans under the Program. Provider is not authorized to receive or retain any Loan Payments from a Borrower. In the event a Borrower erroneously sends a Loan Payment to Provider, Provider

3

agrees it shall not accept the payment, and, if received, will instead promptly return the payment to Borrower in the form received and instruct Borrower to forward the payment to Third Party Servicer for the benefit of Lender, as directed by Contractor.

6. <u>Down Payment</u>. Any Patient Down Payment will be made by Patent directly to the Provider. Contractor shall have no responsibility, obligation, duty, or liability related to or arising out of the Patient Down Payment.

7. <u>Processes and Procedures</u>. The parties shall follow the processes and procedures set forth on <u>Exhibit B</u> hereto with respect to each Application and Loan under the Program. The parties agree to execute and deliver any documents, agreements, instruments, instructions, or otherwise, that are reasonably necessary to permit and enable Lender to perform the procedures and transfer the monies in accordance with the processes set forth in <u>Exhibit B</u>. Provider hereby authorizes Lender to withdraw from Provider's Account, via Automated Clearing House ("<u>ACH</u>") transfer, the Contractor Payment and to transfer the Contractor Payment to an account designated by Contractor. In the event any monies are erroneously deposited or transferred to a party or its account other than in accordance with the procedures described in <u>Exhibit B</u>, the party in receipt of such funds in error will, within three (3) business days, transfer such funds to the account of the appropriate party.

8. <u>Timing of Funding</u>. Provider acknowledges and understands that Lender will not fund a Loan more than sixty (60) days prior to the date a Patient is scheduled to receive the Services which are the subject of the Loan.

## ARTICLE III – REFUNDS AND CANCELLATIONS

1. <u>Provider Refund for Substandard or Noncompliant Services</u>. If, after Services are commenced, Provider reasonably determines, in accordance with its policy for refunding substandard, faulty or improper Services, that a full or partial refund of the cost of the Services is warranted and necessitated, Provider shall promptly notify Contractor, and, within three (3) business days of the determination to process a refund, shall refund the entire outstanding Financed Amount to Lender (or in the case of a partial refund, the amount of the outstanding Financed Amount in proportion to the amount refunded). Lender shall be entitled to retain any prior payments made by Patient associated with such Loan. In the event that the refund exceeds the total sum of the Financed Amount, any additional refund shall be paid to Patient or Borrower by Provider from the Provider Down Payment.

2. <u>Cancellations within 30 Days of Funding</u>. If, on or before thirty (30) days of the disbursement to Provider of the Financed Amount and prior to the commencement of the Services, a Patient elects to cancel the Services, Provider shall promptly notify Contractor of same and shall (A) refund (i) the Provider Payment to Lender and (ii) any Patient Down Payment to the Patient, and (B) Contractor shall refund the Contractor Payment to Lender.

3. <u>Cancellations after 30 Days of Funding</u>. If, after thirty (30) days of the disbursement to Provider of the Financed Amount and prior to the commencement of the Services, a Patient elects to cancel the Services, (A) Provider shall promptly notify Contractor of same and shall refund (i) the entire Provider Payment, plus the Contractor Retained Amount to Lender, and (ii) any Patient Down Payment to the Patient, (B) Contractor shall refund the Contractor Payment to Lender (less

4

$1,000 (the "Contractor Retained Amount")), and (C) Lender shall be entitled to retain any prior payments made by Patient associated with such Loan.

4. Refund Processing via ACH. Any refunds permitted under this Article III will be processed promptly and electronically by ACH transfer to the account of the applicable payee consistent with this Article III. In furtherance of the foregoing, upon receipt of notice of a refund, Provider and Contractor each hereby authorize Lender to process refunds via ACH transfer from their respective bank account(s) to the appropriate payee and agree to deliver such documents, instruments or instructions to Lender or a third party (including Third Party Servicer), or as may be reasonably requested by Lender, Contractor or a third party (including Third Party Servicer), in order to accomplish the foregoing.

5. Prepayments. Notwithstanding the foregoing, in the event that, after the disbursement to Provider of the Financed Amount, a Patient still elects to move forward with the Services but decides to instead pay for all or a portion of the Services in some other manner (e.g., with cash or other credit), (i) no refund of the Financed Amount will be permitted and such payment by the Patient will instead be treated as a prepayment of the Financed Amount (which shall include all accrued but unpaid interest of the applicable portion of the Financed Amount through the date of prepayment), (ii) Contractor shall be entitled to retain the Contractor Payment, and (iii) Lender shall be entitled to retain any prior payments made by Patient under the Loan. Consistent with Section 7 of Article II above, Provider shall not be entitled to receive any such prepayment from Patient or Borrower but shall instead direct the Patient or Borrower to remit the prepayment to Lender or Third Party Servicer in accordance with the Loan Documents.

6. For any given Loan under the Program, under no circumstances shall Contractor be responsible or liable to Provider, Patient or Borrower or any other third party, for any refund amount exceeding the Contractor Payment.

**ARTICLE IV – MUTUAL REPRESENTATIONS AND WARRANTIES.** Each party hereby represents, warrants and covenants to the other parties as of the date of funding of any Financed Amount hereunder as follows:

1. Such party is duly organized, validly existing, and in good standing under the laws of the state of its organization and conducts its business in compliance with applicable Law.

2. Such party has all requisite power and authority to carry on its business as presently conducted, to enter into this Agreement and to perform its obligations under this Agreement. The consummation of the transactions contemplated by this Agreement will not violate, nor be in conflict with, any provision of such party's governing documents, or any agreement, contract, understanding (whether written or verbal) or other instrument or document to which such party is bound, or any judgment, decree, order, statute, rule or regulation applicable to such party.

3. This Agreement constitutes the legal, valid and binding obligation of such party enforceable in accordance with its terms, subject, however, to the effects of bankruptcy, insolvency, reorganization, moratorium and similar laws from time to time in effect, as well as to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

5

**ARTICLE V – PROVIDER REPRESENTATIONS, WARRANTIES AND COVENANTS.** Provider hereby represents, warrants and covenants to Contractor as of the date of funding of any Financed Amount hereunder as follows:

1. All persons who provide, or participate in the provision of, the Services are qualified to do so under applicable Law. All equipment used by Provider in the provision of the Services is approved and permitted by applicable Law. There are no pending or past criminal charges against any person that in any way relate to the provision of the Services. The Services will be fit and merchantable for their intended purpose (if applicable) and have been performed in accordance with customary industry standards. Provider is the sole provider of any Services that are the subject of any Loan under the Program.

2. Provider and Provider's Staff will at all times comply with the Approved Procedures. Provider and Provider's Staff will use commercially reasonable efforts to ensure (i) the accuracy and completeness of all information, documents, statements, consents, and other information obtained or prepared by Provider and submitted in an Application and (ii) that all such information is not misleading or fraudulent.

3. Each signatory to an Application or Loan Document is of legal age, and competent to contract at the time of execution thereof and is not under any duress (including, without limitation, such person being under sedation, extreme discomfort or heavily medicated).

4. Provider has not increased the purchase price or cost of financing for the Services financed by Lender pursuant to the Program or taken any other adverse action against a Patient or prospective Borrower because they are either a member of a protected class (as defined by applicable Law) or because they have chosen to use the Program to finance the payment for the Services.

5. All Provider Staff have completed the Training Program.

6. Provider and Provider's Staff will only use documents and materials (including the Portal) provided by Contractor in connection with the Program. Provider and Provider's Staff will only use the Portal in accordance with the Approved Procedures.

7. Provider shall not discourage Applications for credit or otherwise discriminate on the basis of the Patient's or Borrower's, or prospective Patient's or Borrower's, age, race, religion, gender, sexual classification or membership in any other protected class.

8. Upon the request of Contractor, Provider shall promptly deliver evidence, in a reasonable form satisfactory to Contractor, of compliance with applicable Law, including, but not limited to, copies of any notice or disclosure form furnished to Patients or Borrowers.

9. Provider shall maintain a complete set of records of all business activities conducted by Provider pursuant to this Agreement. Contractor and its duly authorized employees, agents, or representatives, and federal and state regulatory agencies which supervise Contractor or Lender, shall have a right, upon reasonable notice, to audit, inspect and copy any of the

6

foregoing records, reports, files, claims and complaints and related materials of the Provider and Provider shall cooperate and assist in any such audit or inspection.

## ARTICLE VI - INDEMNIFICATION

Provider shall reimburse, indemnify, defend and hold harmless Contractor and its affiliates and each of their respective directors, officers, stockholders, members, partners, owners, managers, employees, agents, attorneys and representatives from and against any and all claims, losses, suits, proceedings, investigations, demands, assessments, causes of action, fines, penalties, refunds, liabilities, obligations or damages and reasonable attorneys' fees and expenses and court costs (collectively, "Damages") incurred or suffered by such indemnified party arising from, related to, caused by or otherwise resulting from (i) the fraud, gross negligence or willful misconduct or omissions of Provider or Provider's Staff; (ii) the breach of Provider's representations, warranties, covenants, agreements or obligations hereunder, (iii) the falsification of information by Provider or Provider's Staff; (iv) unauthorized advertising of Contractor's services, (v) the infringement or misappropriation of Contractor's or Lender's intellectual property or other proprietary rights by Provider or Provider's Staff, (vi) personal injury, medical malpractice or other claim resulting from Provider's or Provider Staff's performance of the Services, (vii) personal injury or property damage caused by Provider's or Provider Staff's performance of Services or its obligations hereunder and (viii) the failure or delay of Provider to refund (or cause to be refunded) monies in accordance with Article III.

## ARTICLE VII – MISCELLANEOUS PROVISIONS

1. Termination; Suspension. Either party may terminate this Agreement on thirty (30) days prior written notice to the other party.  This Agreement may also be terminated under the following circumstances:

   a. Any voluntary or involuntary bankruptcy or insolvency by a party shall be considered an immediate termination event and shall result in the immediate termination of this Agreement.

   b. If a regulatory agency determines, or if a party reasonably believes that, the services provided by a party hereto do not comply with applicable Law, any other party may suspend performance under this Agreement until such non-compliance has been remedied to the reasonable satisfaction of the suspending party or may immediately terminate this Agreement upon written notice to the other party.

2. Effect of Termination.  Notwithstanding termination of this Agreement by any party, (i) the provisions of this Agreement will continue in force as to all Loans made prior to the effective date of termination (including, without limitation, with respect to cancellations or refunds), and (ii) the representations, warranties, covenants and agreements (including, without limitation, indemnification obligations) of the parties shall remain in full force and effect. Upon termination of this Agreement, each party shall promptly return the Confidential Information of each other party, or shall promptly destroy any material containing such Confidential Information (and any copies or extracts thereof).

3. Confidential Information; Intellectual Property; Publicity.

a. Any party (the "<u>Disclosing Party</u>") may provide any other party (the "<u>Receiving Party</u>") with certain confidential and proprietary information by any method and in any form or format, related to the business of the Disclosing Party, whether or not such information or materials are marked "Confidential," "Restricted," "Proprietary" or with other similar marking ("<u>Confidential Information</u>").  Confidential Information includes, but is not limited to, the User Manual, the Portal, software or other technology, product specifications and technical data, product designs/ideas, market/sales forecasts and information, proprietary materials, all business trade secrets, financial and accounting data, business plans, pricing information, policies and procedures, know-how and Nonpublic Personal Information.  However, "Confidential Information" does not include information that: (i) is publicly known at the time of its disclosure; (ii) is lawfully received by the Receiving Party from a third party not under an obligation of confidentiality to the Disclosing Party; (iii) is published or otherwise made known to the public by the Disclosing Party; or (iv) was generated independently by the Receiving Party before disclosure by the Disclosing Party and without the use of any Confidential Information. "<u>Nonpublic Personal Information</u>" shall include all personally identifiable financial information and any list, description or other grouping of consumers or Patients or Borrowers, and publicly available information pertaining to them, that is derived using any personally identifiable financial information that is not publicly available, and shall further include all "nonpublic personal information" of any consumer or Patient or Borrower, as defined by the federal regulations implementing the Gramm- Leach-Bliley Act, as amended from time to time, and shall further include individual health-related information and "Protected Health Information" of a Patient or Borrower as defined by the Health Insurance and Portability Act, related federal regulations, and applicable Law. "<u>Personal identifiable financial information</u>" means all financial information and any additional information a consumer provides to a party in order to obtain a financial product or service, any information a party otherwise obtains about a consumer in connection with providing a financial product or service to that consumer, and any information about a consumer resulting from any transaction involving a financial product or service between a party and a consumer.  Personally identifiable information may include, without limitation, a consumer's first and last name, physical address, zip code, email address, SSN, birth date and any other information that itself identifies or when tied to the above information may identify a consumer.  For the avoidance of doubt, the parties agree that this Agreement does not require transfer of Protected Health Information.

b. The Receiving Party agrees that during the term hereof and for so long as it has such Confidential Information in its possession: (i) it will hold the Confidential Information of the Disclosing Party in the strictest confidence, (ii) it will exercise no less care with respect to the Disclosing Party's Confidential Information than the level of care exercised with respect to its own Confidential Information, but in no event less than reasonable care, and (iii) upon the request of the Disclosing Party, promptly return to the Disclosing Party or destroy all copies of the Disclosing Party's Confidential Information.

c. The Receiving Party shall not use the Disclosing Party's Confidential Information for any purpose other than for the purpose of performance under this Agreement.  The Receiving Party may only disclose the Disclosing Party's Confidential Information to the Receiving Party's officers, directors, key employees and financial and legal advisors who have the need to know such Confidential Information and in order for the Receiving Party to

perform its obligations under this Agreement.  Before any disclosure, such persons must be informed of and will agree to be bound by the provisions of this Section, and the Receiving Party will remain responsible for any unauthorized use or disclosure of the Disclosing Party's Confidential Information by any of them.  The Receiving Party may also disclose the Disclosing Party's Confidential Information pursuant to the requirement or request of a governmental agency, a court or administrative subpoena or an order or other legal process or requirement of law so long as it shall: (i) first notify the Disclosing Party of such request or requirement unless prohibited by applicable Law, (ii) in the case of a required disclosure, furnish only such portion of the Disclosing Party's Confidential Information as it is advised in writing by counsel that it is legally required to disclose, and (iii) cooperate with the Disclosing Party in its efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to that portion of the Disclosing Party's Confidential Information that is required to be disclosed.

d.  All right, title, and interest in and to the technology, the Program, the Portal (including the underlying software associated therewith), the Training Program including the User Manual, and other intellectual property used to provide Contractor's services hereunder shall remain the sole and exclusive property of Contractor.  Provider shall not, and shall not permit any other person or entity to, access or use the Portal except as expressly permitted by this Agreement and the applicable terms of use thereof.  For purposes of clarity and without limiting the generality of the foregoing, Provider shall not, except as this Agreement expressly permits, (i) copy, modify or create derivative works or improvements of the Portal, or (ii) reverse engineer, disassemble, decompile, decode, adapt or otherwise attempt to derive or gain access to the source code of the Portal, in whole or in part.

e.  Each Receiving Party understands and acknowledges that any disclosure or misappropriation of any of a Disclosing Party's Confidential Information in violation of this Agreement may cause the Disclosing Party irreparable harm, the amount of which may be difficult to ascertain and, therefore, agrees that the Disclosing Party shall have the right to apply to a court of competent jurisdiction for an order restraining any such further disclosure or misappropriation and for such other relief as the Disclosing Party shall deem appropriate.  Such right of the Disclosing Party shall be in addition to the remedies otherwise available to the Disclosing Party at law or in equity.

f.  If any incident or circumstance, including without limitation a breach of data security, results in an unauthorized disclosure of Confidential Information of a Disclosing Party, or results in a risk of such disclosure, the Receiving Party shall take appropriate measures to correct or stop the incident or situation, report on the incident or situation to the Disclosing Party as soon as possible after discovery of the incident or situation, subsequently report the corrective action taken by the Receiving Party in response to the incident or situation, and provide reasonable information and assistance to the Disclosing Party so that the Disclosing Party may implement the appropriate response, including any response measures required by applicable Law.  The Receiving Party shall be responsible for reimbursing the Disclosing Party for any and all costs associated with any response measures required by applicable Law.

4.  <u>Survival Clause</u>.  In addition to any provision specifically identified as surviving termination, Article II, Section 6; Article III; Article VI; and Article VII Sections 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 19, 20 and 21 shall survive termination of this Agreement.

5.  <u>Notice</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be considered given and received when (i) personally delivered to the party, (ii) delivered by email to the email address set forth below upon confirmed receipt thereof, or (iii) deposited in the United States mail, postage prepaid, return receipt requested, properly addressed to a party at the address set forth below, or at such other email address or mailing address as such party shall have specified by notice given in accordance with the provisions of this Section.

    CONTRACTOR:
    Med-Den Funding, LLC
    Attn: David Roehr
    4701 Innovation Drive, Suite 200
    Lincoln, NE 68521
    Email: dave@proceedfinance.com


    PROVIDER:
    __Jonathan Dental Spa, LLC__  (name)
    __1111 Goffle Rd__  (address 1)
    __Hawthorne, NJ 07506__  (address 1)
    __lucy.jonathandentalspa@gmai__ (email address)

6.  <u>Insurance</u>.  At all times hereunder, each party shall maintain appropriate insurance coverage for their respective business and personnel, in type, amount and duration, based upon customary practice within such party's respective industry, and adequate in relation to the indemnification obligations under this Agreement.

7.  <u>Advertising</u>.  Provider shall not refer to Contractor or Lender or specific financing options unless given advance written approval by Contractor; provided however that such approval shall not be required if the communication referring to Contractor or Lender or financing options is a communication with its employees or agents and is not directed (or intended to be directed) toward a consumer audience.

8.  <u>Use of Name, Mark, and Logo</u>.  No party may use the name, mark, or logo of any other party without advance written approval of such party whose name, mark or logo is to be used.  Each party's execution of this Agreement constitutes written approval to each other party hereto that they may use another party's name in connection with its performance under this Agreement.

9.  <u>Disclaimer of Warranties</u>.  Each party shall be solely responsible for the selection and use of telecommunications, internet access, and any other systems and services required to connect to, access or otherwise use the Portal or to otherwise engage in the Program provided hereunder, including, without limitation, computers, computer operating system and web browser (collectively, the "Equipment") and any charges associated therewith.  No party shall have liability with respect to the inability of any other party or any Patient or Borrower to

10

access or use the Portal resulting from the Equipment needed to connect to, access or otherwise use Program. Contractor (or its third party partners and vendors) shall have the right to perform scheduled or emergency maintenance with respect to the Portal provided hereunder that may limit or suspend the availability of the services provided hereunder. CONTRACTOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, IMPLIED OR STATUTORY REGARDING THE AVAILABILITY, TIMELINESS, OR RESULTS TO BE DERIVED FROM THE USE OF THE PORTAL, THE PROGRAM, ANY OTHER SOFTWARE UTILIZED IN CONNECTION THEREWITH OR ANY SERVICES PROVIDED HEREUNDER. ALL SUCH PRODUCTS AND SERVICES PROVIDED HEREUNDER ARE PROVIDED TO PROVIDER ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF QUALITY, PERFORMANCE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT, IN EACH CASE TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

10. Waiver of Consequential Damages. IN NO EVENT SHALL CONTRACTOR BE LIABLE TO PROVIDER, OR HAVE ANY LIABILITY, IN CONTRACT, TORT, OR OTHERWISE, FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL (INCLUDING LOSS OF BUSINESS, PROFITS OR DATA), OR PUNITIVE DAMAGES, ARISING OUT OF THIS AGREEMENT OR THE PERFORMANCE HEREOF, EVEN IF PROVIDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

11. Force Majeure. No party nor its affiliates shall be responsible or have any liability for delays or performance failures caused from acts, conditions or circumstances beyond their reasonable control, including, but not limited to, wars, acts of government, natural disasters, acts of terrorism, acts of God, labor strike, cyber-attacks or viruses affecting the use or performance of technology, and only for so long as such act, condition or circumstance exists and remains outside the reasonable control of the party claiming force majeure.

12. Governing Law; Venue. This Agreement shall be construed in accordance with the laws of the State of Nebraska, without regard to its choice of law provisions. Any legal suit, action or proceeding arising out of this Agreement or the transactions contemplated hereby shall be instituted in the federal courts of the United States of America or the courts of the State of Nebraska in each case located in Lancaster County, Nebraska, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party.

13. Severability. If any provisions of this Agreement, as applied to any party or to any circumstance, shall be adjudged by a court of competent jurisdiction to be void and unenforceable, the same shall in no way affect (i) any other provision in this Agreement, (ii) the application of such provision in any other circumstance, or (iii) the validity or enforceability of the Agreement as a whole.

14. Terms Confidential. The parties agree this Agreement and all the terms and conditions of this Agreement shall be treated as Confidential Information.

11

15. <u>Counterparts</u>.  If applicable, this Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which, taken together, shall be deemed to be one Agreement.  Such counterparts may be exchanged by means of electronic transmission.

16. <u>Costs and Expenses</u>.  Each party shall bear its own costs and expenses incurred in connection with this Agreement and the transactions contemplated herein.

17. <u>Independent Contractors</u>.  The parties are independent contractors of each other.  Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment, or fiduciary relationship among the parties.  No party, by virtue of this Agreement, will have any right, power, or authority to act or create an obligation, express or implied, on behalf of any other party.

18. <u>Further Assurances</u>.  The parties shall cooperate fully with each other and execute such further instruments, documents, and agreements, and shall give such further written assurances, as may be reasonably requested by another party to better evidence and reflect the transactions described herein and contemplated hereby, and to carry into effect the intent and purposes of this Agreement.

19. <u>Cumulative Remedies</u>.  The remedies of the parties hereunder are cumulative and in addition to all rights and remedies at law and in equity.

20. <u>Entire Agreement; Amendment; No Waiver; Assignment</u>.  This Agreement, including all exhibits attached hereto and incorporated herein by this reference, is the entire and exclusive statement of the agreement between the parties, and supersedes and merges all prior proposals, understandings and all other agreements, oral and written, between the parties relating to the subject matter hereof.  This Agreement shall not be amended, modified or changed in any manner except by a writing signed by each party; provided, that, the terms and conditions under which Lender is willing to make any new Loans hereunder (including as reflected in the Loan Documents) may be changed or modified from time to time in Lender's sole discretion.  The waiver or failure of any party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further right hereunder.  This Agreement shall not be assigned by a party without the prior written consent of the other party, which shall not be unreasonably withheld; provided, that, a party may assign its rights under this Agreement to any acquirer of such party's business or all or substantially all of such party's assets or pursuant to an assignment as a matter of law pursuant to a merger or otherwise. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their legal representatives, heirs, successors and permitted assigns.

21. <u>Third Party Beneficiary</u>.  Except as stated herein with respect to Lender or the parties entitled to be indemnified hereunder (and their respective heirs, administrators, executors, successors, legal representatives and assigns), nothing expressed or referred to herein shall be construed to give any person or entity other than the parties hereto any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement.

22. <u>Inquiries; Feedback</u>.  Neither party will attempt to answer inquiries from Borrowers or prospective Borrowers concerning the other party's products or services.  Each party will

refer inquiries concerning the other party's products or services to the customer service telephone numbers provided by such other party.

23. <u>Headings</u>.  The headings used in article and section references herein are for convenience of reference only and shall not be used in the interpretation of this Agreement.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

13

This Agreement is executed by the parties to be effective as of the Effective Date.

CONTRACTOR:                                      PROVIDER:

Med-Den Funding, LLC                             Jonathan Dental Spa LLC

_____                          _____
    (signature)                                         (signature)

By:   David Roehr                                By:    Jonathan Abenaim
      (print name)                                      (print name)

Title:   CEO                                     Title:         Owner

Exhibit A

Calculation of Contractor Payment

| Loan Grade[1] | Contractor Percentage[2] |
|---|---|
| A | 3.50% |
| B | 4.00% |
| C | 4.50% |
| D | 5.00% |
| E | 9.90% |
| F | 14.90% |
| G | 19.50% |

---

[1] The loan grade is based on underwriting established by Lender.
[2] The Contractor Payment for a particular Loan shall be calculated based on the loan grade of such Loan by multiplying the applicable Contractor Percentage for such loan grade by the Financed Amount.  By way of example only and for the avoidance of doubt, if the Financed Amount is $10,000 for a Loan Grade D (Contractor Percentage of 5.00%), the Contractor Payment would be $500 and the Provider Payment would be $9,500.

Exhibit B

Program Processes and Procedures

1. Provider Staff consults with Patient and determines whether a need for patient financing exists. Contractor or Lender will provide Program information, such as brochures, pamphlets, online calculators, etc., for review by prospective borrower.
2. Provider Staff directs Patient to the Portal that is accessible via internet-enabled computer or tablet or Patient's internet-enabled home computer or smart phone. The Portal will provide Patient direct access to the Application with just-in-time approval or rejection results.
3. Patient or Borrower completes required information and submits the Application using the Portal. Questions will be directed to Contractor or Third Party Servicer regarding the Program and financing options (if any, as determined by Lender) available.
4. Upon submission of the Loan Application, Patient will receive, via the Portal, an instant decision regarding Lender's approval or rejection of Patient's Loan request.
5. If Lender approves Patient for a Loan, Patient will be presented with all approved Loan options via the Portal. Certain terms and conditions associated with each Loan option offered to Patient will also be displayed.
6. Patient selects which Loan option (if more than one is offered by Lender) it wishes to accept via the Portal. Provider is notified via email once Patient has selected an approved Loan option from Lender.
7. Provider completes all pre-requisite consultations and services for Patient. Via the Portal (using the Provider login information) Provider certifies that the Patient has been cleared for treatment and that the Services will be provided to the Patient. Patient will receive, via email, a notification that Provider has provided this certification.
8. Via the Portal, Patient or Borrower accesses the certified Loan option and all required Loan Documents and related disclosures required by applicable Law.
9. Patient and/or Borrower executes the Loan Documents via electronic acknowledgement using the Portal, and authorizes the signed Loan Documents to be submitted to Lender. Patient or Borrower also has the option to print, wet sign, and upload Loan Documents to Lender via the Portal.
10. Lender sends funding notification to Provider via email. Payment for the Services provided by Provider to Patient will be funded by Lender, via ACH transfer, of the Financed Amount into an account designated by Provider within 1-2 business days of receiving signed Loan Documents; provided, that Lender will not fund a Financed Amount more than sixty (60) days prior to the date a Patient is scheduled to receive the Services which are the subject of the Loan. Borrower shall not receive or retain the Financed Amount.
11. The Loan, in the original principal amount of the Financed Amount, will be owed to Lender by Borrower. Servicing of the Loan on behalf of Lender will be provided by Third Party Servicer.



 11



 Jonathan M. Abenaim

May 14 · 🌐

FYI. Dentists beware.  You ar

EXHIBIT C

10:40

◄ Facebook

**Done**                                          Edit

J███████ A███  that's over my
F word limit. For m... See More

Write a comment...

---

**Jonathan M. Abenaim** ▶ **3shape Trios  Medit /Exocad Club**

2 mins ·

FYI. Dentists beware.  You are scared the covid will come after you?? Try using PROCEED FINANCE. They fund a loan. You do the work. Patient decides to default on the loan. And they come and sue you for the money. Be very careful. It will happen to you. They are not honest. They are not straight people. And their rep Jon Mcnew will tell you lies about your contract with them.  They are probably going under.  Be very careful.  Band together these finance companies are dangerous.

👍 Like                    💬 Comment

---

**UNTUCKit**

Sponsored ·

"Love the product and would not wear any other company's shirts.... Continue Reading



**More**

EXHIBIT D



**J███ F██**

How they come after you? You co-sign the loan?

1h    Like    Reply



**Jonathan M. Abenaim**

J███ F████ nope. They are assholes. And snakes. That's why.  I have money. The patient does not. So they try to use the court in Nebraska where i don't live to screw me

1h    Like    Reply



**K██ S████**

**Jonathan M. Abenaim** you consider countersueing

1h    Like    Reply



**Jonathan M. Abenaim**

K███ S███ working on it

1h    Like    Reply



**Jonathan M. Abenaim**

But my main goal is to make sure no other dentist uses them again.

1h    Like    Reply                            3

 Write a reply...

   Write a comment...                       

               

EXHIBIT E





Tweet

**jonathan abenaim**
@jdentalspa

FYI. Dentists beware. You are scared the covid will come after you?? Try using PROCEED FINANCE. They fund a loan. You do the work. Patient decides to default on the loan. And they come and sue you for the money. Be very careful.
@LoansProceed

10:29 AM · 5/14/20 · Twitter for iPhone

R    H    @                    · 4d
Replying to @jdentalspa and @LoansProceed

We have had nothing but great experiences with @LoansProceed

Tweet your reply

EXHIBIT F



**jonathan abenaim** @jdentalspa · May 14
@AGDougPeterson your office needs to investigate @LoansProceed a compnt in your state that is gouging and strong arming their clients for money. Call me to discuss.

**jonathan abenaim** @jdentalspa · May 14
@GovRicketts your state Attourney general needs to investigate @LoansProceed for shady dealings and cheating People out of their loans. Contact me i will give you the scoop.



2:08 ⬆

‹    The Business Of De...    🔍    •••

🔴 Live        📷 Photo        ➕ Room

**Announcements**                    **See All (15)**


D█ H███████
Admin · 27m · 🗓

Hey folks, not sure if you have seen this yet
but I just saw a very disturbing post from
**Jonathan M. Abenaim**. Evidently Proceed
Finance has a clause in their contract that
allows the to sue YOU if a patient defaults.

Has anyone else had this experience?!

Photo is from Jonathan's post. Guys this is a
hard pass for me. Proceed approached me to
offer TBOD a group deal and I passed. Man
am I glad that I did now. Jonathan, thanks for
sharing this.



🏠    ▶️    👥    🚩    🔔    ☰



# HUSCH BLACKWELL

Marnie A. Jensen
Partner

13330 California Street, Suite 200
Omaha, NE 68154
Direct: 402.694.5034
Fax: 402.964.5050
marnie.jensen@huschblackwell.com

June 3, 2020

**VIA E-MAIL & CERTIFIED MAIL**

Jonathan M. Abenaim
Jonathan Dental Spa, LLC
1111 Goffle Road
Hawthorne, NJ 07506
E-Mail: lucy.jonathandentalspa@gmail.com

Re:     **CEASE AND DESIST & RETRACTION DEMAND**

Dear Jonathan M. Abenaim:

My firm represents Med-Den Funding, LLC d/b/a/ Proceed Finance ("Proceed Finance"). We have been made aware that you and your company have made factually false disparaging statements on Facebook and Twitter regarding Proceed Finance and have indicated an intent to drive business away from our client.  Through this letter, Proceed Finance demands that all libelous statements be immediately retracted and you cease all of your attempts to interfere with Proceed Finance's current and prospective business relationships, as set forth below.

First, in accordance with Neb. Rev. Stat. § 25-840.01, Proceed Finance demands the retraction and correction of your libelous statements published and disseminated by you.  Based on your "Freedom of Speech" post, you are presumably aware that certain opinions are not subject to defamation.  However, your posts have crossed this line and assert factually false information regarding Proceed Finance.  Specifically, you have asserted that Proceed Finance representatives "tell lies" about the contracts Proceed Finance enters with its clients.  Further, you declare that "[Proceed Finance is] probably going under."   "[A] business entity may maintain a defamation action if the publication directly relates to its business, property, or credit." *Steinhausen v. HomeServices of Nebraska, Inc.*, 289 Neb. 927, 939, 857 N.W.2d 816, 827 (2015). Your statements directly defame Proceed Finance's business reputation and its creditworthiness, in contradiction to fact.  As such, you are liable to Proceed Finance for defamation *per se*. Accordingly, "no proof of any actual harm to reputation or any other damage is required for the recovery of either nominal or substantial damages."  *McCune v. Neitzel*, 235 Neb. 754, 763, 457 N.W.2d 803, 810 (1990).  Rather, Proceed Finance is entitled to general damages from you for harm to its reputation, which "amount of damages is almost entirely in the jury's discretion." *Id.*

# HUSCH BLACKWELL

Jonathan M. Abenaim
June 3, 2020
Page 2

at 765, 457 N.W.2d at 811 (emphasis added).  This is in addition to any special damages Proceed Finance can directly link to your actions, and damages owing to any lost business relationships.

Further, your allegations regarding Proceed Finance "gouging" and "strong arming" its customers directly impute to Proceed Finance the commission of baseless criminal acts.  "Spoken or written words are slanderous or libelous per se . . . if they falsely impute the commission of a crime involving moral turpitude . . . or if they prejudice one in his or her profession or trade . . ." *Norris v. Hathaway*, 5 Neb. App. 544, 548, 561 N.W.2d 583, 586 (1997).  These statements are additionally defamatory *per se* and subject you to general and special damages.

Under Neb. Rev. Stat. § 25-840.01, Proceed Finance demands that you retract the following statements and issue corrections:

1) "And their rep Jon McNew will tell you lies about your contract with them."

2) "They are probably going under."

3) "And the rep is a liar and cares only about his commission."

4) "@AGDougPeterson your office needs to investigate @LoansProceed a compnt [sic] in your state that is gouging and strong arming their clients for money."

5) "@GovRicketts your state Attourney [sic] general needs to investigate @LoansProceed for shady dealings and cheating People out of their loans."

The above statements are factually false statements, rather than protected opinion, and thus Proceed Finance demands that they be deleted from any and all social media posts or any other mediums on which you have disseminated these statements.  Further, under Section 25-804.01(1) you must publish a correction regarding these statements **within three weeks from receipt of this letter**.  Such correction "shall be made in substantially as conspicuous a manner as the original publication about which complaint was made."  *Id.*  Be advised, your prompt compliance with Neb. Rev. Stat. § 25-840.01 will serve only to relieve you from *general damages* under defamation law only.  Proceed Finance does not waive its right to recover special damages under this claim, or others.

Second, we additionally demand that you *cease and desist all* attempts to interfere with Proceed Finance's current and prospective business relationships.  Regardless of whether particular statements fall within factual assertions subject to defamation, any attempt by you to intentionally and improperly drive business away from Proceed Finance may subject you to liability for tortious interference.  A claim for tortious interference with a business relationship lies where there exists (1) "a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of

# HUSCH BLACKWELL

Jonathan M. Abenaim
June 3, 2020
Page 3

the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Recio v. Evers*, 278 Neb. 405, 418, 771 N.W.2d 121, 131 (2009). Proceed Finance has already suffered and will continue to suffer damage to its business relationships and reputation as a result of your actions. You are liable for the lost profits caused by clients driven off by your statements, in addition to reputational damage. Ordinarily, plaintiffs struggle to prove knowledge on the part of a defendant of a plaintiff's business relationship or expectancy, as well as the intent of the defendant. Fortunately for Proceed Finance, you have already built most of the case against yourself and will save us significant time and expense in establishing this claim against you. You have specifically stated in multiple mediums that your "main goal is to make sure no other dentist uses [Proceed Finance] again." You can expect to see this statement as evidence in Proceed Finance's case establishing several elements of tortious interference against you.

Finally, your statements also constitute a violation of Nebraska's Deceptive Trade Practices Act. *See* Neb. Rev. Stat. § 87-301 *et. seq.* Your statements arise within the course of your "business, vocation, or occupation," and you have disparaged "the goods, services, or business of [Proceed Finance] by false or misleading representation of fact[.]" Neb. Rev. Stat. § 87-302(a) & (a)(9). Under this Act, Proceed Finance may seek temporary and permanent injunctive relief against you, and is not required to provide proof of monetary damage, loss of profits, or intent to deceive. *See* Neb. Rev. Stat. § 87-303(a). In advancing such a suit against you, Proceed Finance will seek recovery of its court costs and its attorneys' fees. *See id.*at (b). Such remedies are "<u>in addition to</u> remedies otherwise available against the same conduct under the common law [such as defamation and tortious interference] or other statutes of this state." *Id.* at (d) (emphasis added).

While under Neb. Rev. Stat. § 25-840.01, you have three weeks to retract the statements identified above in particular and to issue a correction to avoid general damages in defamation, Proceed Finance is unwilling to wait this long prior to bringing suit against you for tortious interference and violation of the Nebraska Deceptive Trade Practices Act. Accordingly, to avoid this prospect, we demand on behalf of Proceed Finance that you **immediately** cease and desist all disparaging statements regarding Proceed Finance, and all attempts to drive business away from it. You have **three days from receipt of this letter** to respond to the undersigned to confirm your compliance with this demand. If we do not hear from you within this time frame, our client is prepared to take appropriate and immediate steps to protect its reputation and valuable rights. Please understand Proceed Finance is fully prepared to take all necessary legal action against you. This may include litigation seeking damages to Proceed Finance's reputation, goodwill with its clients, temporary and permanent injunctive relief to force removal of your posts and prevent further defamatory and tortious statements, and/or recovery of Proceed Finance's costs and attorneys' fees, to the full extent permitted by law.

**HUSCH BLACKWELL**

Jonathan M. Abenaim
June 3, 2020
Page 4


      This letter should not be construed as a full recitation of facts supporting Proceed Finance's position, and nothing contained herein is intended to constitute a waiver of, or otherwise prejudice, any of Proceed Finance's legal rights.  As you know, you and your company have engaged in numerous acts of fraud in the past, and Proceed Finance is separately pursuing those claims.  This letter is in addition to those separate claims.  If you have questions or would like to discuss this matter in more detail, please do not hesitate to contact me.


      Sincerely,

      HUSCH BLACKWELL LLP


      Marnie A. Jensen
      Partner

ALERT: DUE TO LIMITED TRANSPORTATION AVAILABILITY AS A RESULT OF NATIONWIDE CO…

# USPS Tracking®

FAQs >

## Track Another Package  +

**Tracking Number:** 70180680000230119495

Remove ✕

Your item was delivered to an individual at the address at 11:13 am on June 9, 2020 in
HAWTHORNE, NJ 07506.

 **Delivered**

June 9, 2020 at 11:13 am
Delivered, Left with Individual
HAWTHORNE, NJ 07506

Feedback

### Text & Email Updates    ⌄

### Tracking History    ⌃

**June 9, 2020, 11:13 am**
Delivered, Left with Individual
HAWTHORNE, NJ 07506
Your item was delivered to an individual at the address at 11:13 am on June 9, 2020 in HAWTHORNE, NJ
07506.

**June 9, 2020, 7:10 am**
Out for Delivery
HAWTHORNE, NJ 07506

**June 8, 2020, 4:06 pm**
Arrived at Unit
HAWTHORNE, NJ 07506

---

**June 8, 2020**
In Transit to Next Facility

---

**June 7, 2020, 7:17 pm**
Departed USPS Regional Facility
TETERBORO NJ DISTRIBUTION CENTER

---

**June 7, 2020, 7:58 am**
Arrived at USPS Regional Facility
TETERBORO NJ DISTRIBUTION CENTER

---

**June 4, 2020, 3:59 pm**
Departed USPS Regional Facility
OMAHA NE DISTRIBUTION CENTER

---

**June 3, 2020, 7:58 pm**
Arrived at USPS Regional Facility
OMAHA NE DISTRIBUTION CENTER

Feedback

---

**Product Information** ⌄

---

See Less ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

**EXHIBIT J**

Jonathan's Post


A██████ C████████ G██████
$100,000 grand doubt it lol

3m  Like  Reply


A██████ C████████ G██████
J████ ████ A████ i pay $148 per month for braces lol 😆

2m  Like  Reply

Write a reply...


M████████ E██████
I was just about to sign up... thanks for posting this

1m  Like  Reply


Jonathan M. Abenaim
M████████ E██████ smart move. Look into greensky. They have an amazing system in place since covid.

Just now  Like  Reply

Write a reply...


Matthew Eaton
J████ M████

Just now  Like  Reply

Write a comment...  GIF  ☺

# IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

MED-DEN FUNDING, LLC,         )
                                         )            Case No. CI 20-

           Plaintiff,          )
                                         )

          V.                     )         **PRAECIPE FOR SUMMONS**
                                       )

JONATHAN M. ABENAIM; JONATHAN )
DENTAL SPA AT THE CENTER FOR    )
COSMETIC & IMPLANT DENTISTRY,  )
LLC,                                    )
                                         )

          Defendants.      )

TO:    Clerk of the District Court of Lancaster County, Nebraska

Please issue summons for service upon Defendant **JONATHAN M. ABENAIM**, via **personal service** by private process server as follows:

    Jonathan M. Abenaim
    Jonathan Dental Spa, LLC
    1111 Goffle Road
    Hawthorne, NJ 07506

Document to be served is the Complaint filed with this Court on July 7, 2020, and attached Exhibits A-J.

Please issue summons for service upon Defendant **JONATHAN DENTAL SPA AT THE CENTER FOR COSMETIC & IMPLANT DENTISTRY, LLC**, via **personal service** by private process server as follows:

    Jonathan Dental Spa, LLC
    1111 Goffle Road
    Hawthorne, NJ 07506

Document to be served is the Complaint filed with this Court on July 7, 2020, and attached Exhibits A-J.

    DATED: July 7, 2020

MED-DEN FUNDING, LLC,
Plaintiff,

By:     <u>s/ Quinn R. Eaton</u>
Marnie A. Jensen (#22380)
David A. Lopez (#24947)
Quinn R. Eaton (#26318)
HUSCH BLACKWELL LLP
13330 California St., Ste. 200
Omaha, NE  68154
Telephone: (402) 964-5000
Fax: (402) 964-5050
marnie.jensen@huschblackwell.com
dave.lopez@huschblackwell.com
quinn.eaton@huschblackwell.com

**Attorneys for Plaintiff**

2

| Image ID:<br>D00598926D02 | **SUMMONS** | Doc. No.    598926 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                 NE 68508

Med-Den Funding, LLC v. Jonathan M. Abenaim

Case ID: CI 20      2371

TO:  Jonathan M Abenaim

**FILED BY**
Clerk of the Lancaster District Court
07/07/2020

You have been sued by the following plaintiff(s):

   Med-Den Funding, LLC

Plaintiff's Attorney:    Quinn R Eaton
Address:                 13330 California St, Ste 200
                         Omaha, NE 68154

Telephone:               (402) 964-5000

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  JULY 7, 2020      BY THE COURT:      _Troy L. Hawk_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

     Jonathan M Abenaim
     Jonathan Dental Spa, LLC
     1111 Goffle Rd
     Hawthorne, NJ 07506

BY:  Foreign Officer
Method of service:  Personal Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

| SERVICE RETURN | Doc. No.    598926 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

To: Foreign Officer
Case ID: CI 20    2371 Med-Den Funding, LLC v. Jonathan Abenaim

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                       _____

Mileage ____miles          _____

   TOTAL              $ _____

Date: _____      BY: _____
                                        (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____      Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Jonathan M Abenaim            From: Quinn R Eaton
    Jonathan Dental Spa, LLC            13330 California St, Ste 200
    1111 Goffle Rd                      Omaha, NE 68154
    Hawthorne, NJ 07506

## ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00598927D02 | **SUMMONS** | Doc. No.   598927 |
|---|---|---|

```
          IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
                  575 S. 10th Street - 3rd Floor
                  SEPARATE JUVENILE COURT-4th Floor
                  Lincoln              NE 68508
```

Med-Den Funding, LLC v. Jonathan M. Abenaim

Case ID: CI 20     2371

TO:  Jonathan Dental Spa, LLC

**FILED BY**

Clerk of the Lancaster District Court
07/07/2020

You have been sued by the following plaintiff(s):

     Med-Den Funding, LLC

Plaintiff's Attorney:    Quinn R Eaton
Address:                 13330 California St, Ste 200
                         Omaha, NE 68154

Telephone:               (402) 964-5000

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  JULY 7, 2020      BY THE COURT: _____
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

          Jonathan Dental Spa, LLC
          1111 Coffle Road
          Hawthorne, NJ 07506

BY:  Foreign Officer
Method of service:  Personal Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

| SERVICE RETURN | Doc. No.   598927 |
|---|---|

```
            LANCASTER DISTRICT COURT
            575 S. 10th Street - 3rd Floor
            SEPARATE JUVENILE COURT-4th Floor
            Lincoln              NE 68508
To: Foreign Officer
Case ID: CI 20    2371 Med-Den Funding, LLC v. Jonathan Abenaim
```

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                        _____

Mileage ____miles           _____

   TOTAL                   $ _____

Date: _____   BY: _____
                                        (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____   Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

```
To: Jonathan Dental Spa, LLC        From: Quinn R Eaton
    1111 Coffle Road                      13330 California St, Ste 200
                                          Omaha, NE 68154
    Hawthorne, NJ 07506
```

# ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200002371
Transaction ID: 0011221248
Filing Date: 07/08/2020 02:13:05 PM CDT

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| MED-DEN FUNDING, LLC, | ) | Case No. CI 20-2371 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MOTION FOR** |
| | ) | **TEMPORARY INJUNCTION** |
| JONATHAN M. ABENAIM; JONATHAN | ) | |
| DENTAL SPA AT THE CENTER FOR | ) | |
| COSMETIC & IMPLANT DENTISTRY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Med-Den Funding, LLC, d/b/a Proceed Finance ("Proceed Finance"), hereby moves this Court pursuant to Neb. Rev. Stat. §§ 25-1063 and 25-1064 for a temporary injunction to compel Defendants, Jonathan M. Abenaim ("Abenaim") and Jonathan Dental Spa at the Center for Cosmetic & Implant Dentistry, LLC ("Jonathan Dental Spa") (collectively, "Defendants"), to retract statements made regarding Proceed Finance which are defamatory in nature, tortiously interfere with Proceed Finance's business relationships and/or expectancies, and which constitute a deceptive trade practice. Further, Proceed Finance seeks for this Court to enjoin Defendants from making any further defamatory statements which seek to tortiously interfere with and/or disparage Proceed Finance's business, in violation of Nebraska common law and the Deceptive Trade Practices Act. In support of its Motion, Proceed Finance relies on its Complaint and Exhibits, and its forthcoming Brief in Support of Motion for Temporary Injunction and affidavits, and asserts the following:

1.      A Nebraska court may grant a temporary injunction if (1) it appears that the plaintiff is likely to succeed on the merits, (2) if a judgment would be ineffectual, or if failure to grant a temporary injunction would produce great or irreparable harm to the plaintiff, and (3) if the harm

facing the plaintiff is greater than the harm to the defendant upon granting the injunction.  Neb. Rev. Stat. § 25-1063; *see, e.g., Gahan ex rel. Gahan v. U.S. Amateur Confederation of Roller Skating*, 382 F. Supp. 2d 1127, 1129 (D. Neb. 2005).

    2.    Proceed Finance is likely to succeed on the merits of its Complaint because Defendants are plainly making defamatory statements which tortiously interfere with Proceed Finance's business relationships and/or expectancies and are engaging in disparagement of Proceed Finance in violation of the Nebraska Deceptive Trade Practices Act.

    a.  Abenaim has made a series of false, defamatory, and disparaging posts regarding Proceed Finance on social media pages, referencing his relationship with Proceed Finance through Jonathan Dental Spa.

    b.  Abenaim posted to his personal Facebook profile that dentists should "beware" of Proceed Finance, and falsely stated that Proceed Finance will sue dentist providers if a patient defaults on their loan.  Abenaim has further stated that Proceed Finance is not honest, and that the company is "probably going under."

    c.  Abenaim has made these posts within groups be directed at various professionals within the dentistry industry.  His posts have included copies of a lawsuit brought by Proceed Finance against Jonathan Dental Spa.

    d.  Abenaim has specifically stated that his "main goal is to make sure no other dentist uses [Proceed Finance] again."

    e.  Further, Abenaim made two Twitter posts "tagging" Nebraska Attorney General Doug Peterson and Nebraska Governor Pete Ricketts, stating that the Attorney General's Office needed to investigate Proceed Finance for "gouging" and "strong arming" its clients, and for "shady dealing and cheating" people out of loans.

2

f.  Defendants' statements regarding Proceed Finance lying to customers, not being honest with its loans, and allegations that Proceed Finance is "going under" disparage and defame Proceed Finance in its business reputation and its creditworthiness.

g.  Such statements assert demonstrably false factual allegations as Proceed Finance does not provide false information regarding its services and the company is financially-sound.

h.  Further, Defendants' allegations regarding Proceed Finance "gouging" and "strong arming" its customers directly impute to Proceed Finance the commission of baseless criminal acts.

i.  Such statements assert demonstrably false factual allegations as all transactions with Procced Finance's customers are transparent, voluntary, and performed at arms-length, nor does Proceed Finance engage in any criminal activity in performing its services.

j.  Proceed Finance has valid business relationships, expectancies, and/or opportunities with its current dentist provider clients and prospective dentist provider clients.

k.  Based on Defendants' own contractual relationship with Proceed Finance, and their statements expressing an intent to make sure no "other dentist" did business with Proceed Finance, Defendants were and are aware that Proceed Finance has valid business relationships, expectancies, and/or opportunities with its current dentist provider clients and prospective dentist provider clients.

l.  Defendants committed unjustified and improper interference with Proceed Finance's valid business relationships, expectancies, and/or opportunities with its current dentist provider clients and prospective dentist provider clients when they published false and

3

disparaging statements, as described above, regarding Proceed Finance's business, honesty, and creditworthiness.

m. Such interference was intentional on Defendants' part, as specifically acknowledged in their statement that they intended to make sure no other dentist did business with Proceed Finance again, and as evidenced by their posting such comments to Facebook groups specifically targeted towards dental professionals.

n. As a direct result of Defendants' unjustified interference, Proceed Finance has lost, and will continue to lose business from dentist providers who have seen Defendants' statements

o. Defendants have disparaged the services and goods of Proceed Finance through numerous specific, documented, false and misleading representations of fact.

p. Defendants disparaged the services and goods of Proceed Finance in the course of their business, vocation or occupation. Defendants engaged in the business, vocation or occupation of dentistry and in the receipt of loan financing arrangements for use by Defendants' patients to pay for Defendants' dental services. Defendants' false, defamatory and disparaging statements relate to Procced Finance's provision of services to Defendants' business.

3.      Proceed Finance will suffer substantial and irreparable harm if Defendants are not ordered to retract their defamatory and tortious statements and enjoined from continuing with their current course of action. Proceed Finance is currently aware of at least one dentist provider that has ceased doing business with Proceed Finance as a direct result of Defendants' statements. There is reason to suspect this is not an isolated instance. Further, any eventual judgment will be ineffectual to fully remedy the harm to Proceed Finance. Proceed Finance will incur irreparable

4

harm well before it could obtain a final judgment as it will not be possible to fully determine the scope of current providers who cease dealing with Proceed Finance as a result of Defendants' posts. Nor will Proceed Finance have any feasible method to fully determine the number of prospective clients that would have done business with Proceed Finance in the absence of Defendants' statements. Based on the demonstrated past behavior of Defendants, it is reasonable to assume that Defendants will react to Proceed Finance's Complaint in this matter by making exponentially more defamatory and disparaging statements, which will compound and multiply harm to Proceed Finance while this suit is ongoing.

4.     Defendants will not experience any harm from a temporary injunction. Defendants may continue to state their opinion on any matter they please, however, no one is privileged to make false, defamatory statements calculated to tortiously interference with current or prospective business relationships. Nor is anyone privileged to disparage another's business with false factual misrepresentations. Thus, Defendants will not lose anything that they have the right to do in the first place. In the event the Court were to ultimately find Proceed Finance unsuccessful on the merits of its claims, Defendants still will have not suffered any irreparable harm, as they may simply continue posting to social media sites after such a hypothetical decision of this Court, and will not have suffered monetarily or otherwise in the interim.

WHEREFORE, Proceed Finance requests this Court issue a temporary injunction to require Defendants to retract statements made regarding Proceed Finance which are defamatory in nature, tortiously interfere with Proceed Finance's business relationships and/or expectancies, and which constitute a deceptive trade practice. Further, Proceed Finance seeks for this Court to enjoin Defendants from making any further defamatory statements which seek to tortiously interfere with

and/or disparage Proceed Finance's business, in violation of Nebraska common law and the Deceptive Trade Practices Act.

Dated: July 8, 2020.

                              MED-DEN FUNDING, LLC,
                              Plaintiff

                         By: /s/  David A. Lopez
                              Marnie A. Jensen (#22380)
                              David A. Lopez (#24947)
                              Quinn R. Eaton (#26318)
                              HUSCH BLACKWELL LLP
                              13330 California St., Ste. 200
                              Omaha, NE  68154
                              Telephone: (402) 964-5000
                              Facsimile: (402) 964-5050
                              marnie.jensen@huschblackwell.com
                              d a v e . l o p e z @ h u s c h b l a c k w e l l . c o m
                              quinn.eaton@huschblackwell.com

## NOTICE OF HEARING

You are hereby notified that the foregoing Motion will be heard before the Honorable Susan Strong, via telephonic hearing with the Court to call the Parties, on the 8th day of August 2020, at 10:00 a.m., or as soon thereafter as counsel may be heard.

6

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing is being sent for personal service

via private process server this 8th day of July 2020, to the following:

> Jonathan M. Abenaim
> Jonathan Dental Spa, LLC
> 1111 Goffle Road
> Hawthorne, NJ 07506

<em>s/ David A. Lopez</em>

# Certificate of Service

I hereby certify that on Wednesday, July 08, 2020 I provided a true and correct copy of the Motion Filed to the following:

Med-Den Funding, LLC represented by Quinn Robert Eaton (Bar Number: 26318) service method: Electronic Service to quinn.eaton@huschblackwell.com

Abenaim,Jonathan,M, service method: Personal Service

Jonathan Dental Spa, LLC service method: Personal Service

Signature: /s/ David A. Lopez (Bar Number: 24947)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200002371
Transaction ID: 0011228146
Filing Date: 07/09/2020 10:24:26 AM CDT

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| MED-DEN FUNDING, LLC, | ) | Case No. CI 20-2371 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED NOTICE OF HEARING** |
| | ) | |
| JONATHAN M. ABENAIM; JONATHAN | ) | |
| DENTAL SPA AT THE CENTER FOR | ) | |
| COSMETIC & IMPLANT DENTISTRY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

You are hereby notified that Plaintiff, Med-Den Funding, LLC, d/b/a Proceed Finance's ("Proceed Finance"), Motion for Temporary Injunction will be heard before the Honorable Susan Strong, via telephonic hearing with the Court to call the Parties, on the 6th day of August 2020, at 10:00 a.m., or as soon thereafter as counsel may be heard.

Dated: July 9, 2020.

MED-DEN FUNDING, LLC,
Plaintiff

By: /s/  *David A. Lopez*
    Marnie A. Jensen (#22380)
    David A. Lopez (#24947)
    Quinn R. Eaton (#26318)
    HUSCH BLACKWELL LLP
    13330 California St., Ste. 200
    Omaha, NE  68154
    Telephone: (402) 964-5000
    Facsimile: (402) 964-5050
    marnie.jensen@huschblackwell.com
    dave.lopez@huschblackwell.com
    quinn.eaton@huschblackwell.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing was sent via U.S. Mail, postage prepaid, this 9th day of July 2020, to the following:

Jonathan M. Abenaim
Jonathan Dental Spa, LLC
1111 Goffle Road
Hawthorne, NJ 07506

*s/ David A. Lopez*

2

# Certificate of Service

I hereby certify that on Thursday, July 09, 2020 I provided a true and correct copy of the Amended Notice of Hearing to the following:

Abenaim,Jonathan,M, service method: First Class Mail

Jonathan Dental Spa, LLC service method: First Class Mail

Med-Den Funding, LLC represented by Quinn Robert Eaton (Bar Number: 26318) service method: Electronic Service to quinn.eaton@huschblackwell.com

Signature: /s/ David A. Lopez (Bar Number: 24947)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200002371
Transaction ID: 0011246902
Filing Date: 07/13/2020 10:23:44 AM CDT

# IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
## 575 S. 10TH STREET - 3RD FLOOR SEPARATE JUVENILE COURT-4TH FLOOR LINCOLN NE 68508

**Med-Den Funding, LLC**

*Plaintiff(s) / Petitioner(s)*

v.

Case No.: Doc. No. 598927, Case
ID: CI 20 2371

**Med-Den Funding, LLC**

*Defendant(s) / Respondent(s)*

## <u>AFFIDAVIT OF SERVICE</u>

I, Gladimar Robles, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents on Jonathan Abenaim in Passaic County, NJ on July 9, 2020 at 9:17 am at Jonathan Dental Spa, LLC, 1111 Goffle Road, Hawthorne, NJ 07506 by personal service by handing the following documents to an individual identified as Jonathan Abenaim.

Summons to Jonathan Abenaim
Motion for Temporary Injunction
Complaint and Jury Demand with Supporting Exhibits

Additional Description:
Work

White Male, est. age 35, glasses: N, Brown hair, 200 lbs to 220 lbs, 5' 9" to 6'.
Geolocation of Serve: http://maps.google.com/maps?q=40.9693234681,-74.1520429795
Photograph: See Exhibit 1

I DECLARE UNDER PENALTY OF PERJURY THAT THE FACTS HEREIN ARE TRUE AND CORRECT.

Executed in __Passaic County__, __NJ__ on __7/9/2020__.

*Gladimar Robles*
Signature
Gladimar Robles
(973) 920-8080

# Exhibit 1

Exhibit 1a)



| Image ID:<br>D00598926D02 | **SUMMONS** | Doc. No.   598926 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
                        575 S. 10th Street - 3rd Floor
                        SEPARATE JUVENILE COURT-4th Floor
                        Lincoln            NE 68508

Med-Den Funding, LLC v. Jonathan M. Abenaim

                                              Case ID: CI 20     2371

TO:  Jonathan M Abenaim

                                              **FILED BY**
                                    Clerk of the Lancaster District Court
                                              07/07/2020

You have been sued by the following plaintiff(s):

        Med-Den Funding, LLC

Plaintiff's Attorney:    Quinn R Eaton
Address:                 13330 California St, Ste 200
                         Omaha, NE 68154

Telephone:               (402) 964-5000

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  JULY 7, 2020       BY THE COURT: _Tracy L. Clerk_
                                                Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Jonathan M Abenaim
        Jonathan Dental Spa, LLC
        1111 Goffle Rd
        Hawthorne, NJ 07506

BY:  Foreign Officer
Method of service:  Personal Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

| SERVICE RETURN | Doc. No.    598926 |
|---|---|

```
                 LANCASTER DISTRICT COURT
                 575 S. 10th Street - 3rd Floor
                 SEPARATE JUVENILE COURT-4th Floor
                 Lincoln              NE 68508
To: Foreign Officer
Case ID: CI 20    2371 Med-Den Funding, LLC v. Jonathan Abenaim
```

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                        _____

Mileage _____miles          _____

    TOTAL                 $ _____

Date: _____     BY: _____
                                       (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                  _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

```
To: Jonathan M Abenaim                From: Quinn R Eaton
    Jonathan Dental Spa, LLC                13330 California St, Ste 200
    1111 Goffle Rd                          Omaha, NE 68154
    Hawthorne, NJ 07506
```

# ATTACH RETURN RECEIPT & RETURN TO COURT



# Invoice #34237

July 11, 2020

**Billing/Matter #: 529030-6**
**Servee: Jonathan Abenaim**

| | |
|---|---|
| **Husch Blackwell LLP** | **PROOF** |
| 13330 California St | 1800 N Gaylord St |
| Ste 200 | Denver, CO 80206 |
| Omaha, Nebraska 68154 | Attn: accounting@proofserve.com |

| ITEM | PRICE | QTY | TOTAL |
|---|---|---|---|
| **Same Day Serve (Base Fee)**<br>Attempts Made: 2 | $75.00 | 1 | $75.00 |
| **Same Day Serve (Bounty)**<br>Served: July 9, 2020 | $150.00 | 1 | $150.00 |
| **Jonathan Abenaim**<br>2nd Address | $75.00 | 1 | $75.00 |

| | |
|---|---|
| **TOTAL:** | **$300.00** |
| **PAID:** | **$300.00** |
| **BALANCE:** | **$0.00** |

## Certificate of Service

I hereby certify that on Monday, July 13, 2020 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Abenaim,Jonathan,M, service method: First Class Mail

Jonathan Dental Spa, LLC service method: First Class Mail

Signature: /s/ Quinn Robert Eaton (Bar Number: 26318)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200002371
Transaction ID: 0011246946
Filing Date: 07/13/2020 10:28:13 AM CDT

# IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

**Med-Den Funding, LLC**

    *Plaintiff(s) / Petitioner(s)*

v.

**Jonathan M. Abenaim**

    *Defendant(s) / Respondent(s)*

Case No.: Doc. No. 598927, Case
ID: CI 20 2371

## <u>AFFIDAVIT OF SERVICE</u>

I, Gladimar Robles, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents on Jonathan Dental Spa, LLC in Passaic County, NJ on July 9, 2020 at 9:16 am at 1111 Goffle Road, Hawthorne, NJ 07506 by leaving the following documents with Jonathan Abenaim who as Registered Agent is authorized by appointment or by law to receive service of process for Jonathan Dental Spa, LLC.

Summons to Jonathan Dental Spa
Motion for Temporary Injunction
Complaint and Jury Demand with Supporting Exhibits

Additional Description:
Business

White Male, est. age 35, glasses: N, Brown hair, 200 lbs to 220 lbs, 5' 9" to 6'.
Geolocation of Serve: http://maps.google.com/maps?q=40.9693234681,-74.1520429795
Photograph: See Exhibit 1

I DECLARE UNDER PENALTY OF PERJURY THAT THE FACTS HEREIN ARE TRUE AND CORRECT.

Executed in __Passaic County__ , __NJ__ on
__7/9/2020__ .

*Gladimar Robles*
_____
Signature
Gladimar Robles
(973) 920-8080

# Exhibit 1

Exhibit 1a)



Image ID:
D00598927D02

## SUMMONS

Doc. No.    598927

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

Med-Den Funding, LLC v. Jonathan M. Abenaim

Case ID: CI 20    2371

TO:  Jonathan Dental Spa, LLC

**FILED BY**

Clerk of the Lancaster District Court
07/07/2020

You have been sued by the following plaintiff(s):

Med-Den Funding, LLC

Plaintiff's Attorney:    Quinn R Eaton
Address:                 13330 California St, Ste 200
                         Omaha, NE 68154

Telephone:               (402) 964-5000

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  JULY 7, 2020        BY THE COURT: _____
                                              Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

Jonathan Dental Spa, LLC
1111 Coffle Road
Hawthorne, NJ 07506

BY:  Foreign Officer
Method of service:  Personal Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

## SERVICE RETURN

Doc. No.   598927

```
          LANCASTER DISTRICT COURT
          575 S. 10th Street - 3rd Floor
          SEPARATE JUVENILE COURT-4th Floor
          Lincoln              NE 68508
To: Foreign Officer
Case ID: CI 20    2371 Med-Den Funding, LLC v. Jonathan Abenaim
```

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                        _____

Mileage ____miles           _____

   TOTAL                 $ _____

Date: _____    BY: _____
                                       (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

```
To: Jonathan Dental Spa, LLC          From: Quinn R Eaton
    1111 Coffle Road                         13330 California St, Ste 200
                                             Omaha, NE 68154
    Hawthorne, NJ 07506
```

## ATTACH RETURN RECEIPT & RETURN TO COURT



# Invoice #34236

July 11, 2020

**Billing/Matter #: 529030-6**
**Servee: Jonathan Dental Spa, LLC**

**Husch Blackwell LLP**
13330 California St
Ste 200
Omaha, Nebraska 68154

**PROOF**
1800 N Gaylord St
Denver, CO 80206
Attn: accounting@proofserve.com

| ITEM | PRICE | QTY | TOTAL |
|---|---|---|---|
| **Same Day Serve (Base Fee)**<br>Attempts Made: 2 | $75.00 | 1 | $75.00 |
| **Same Day Serve (Bounty)**<br>Served: July 9, 2020 | $150.00 | 1 | $150.00 |
| **New Address**<br>Address added after a serve attempt has already been made | $75.00 | 1 | $75.00 |
| **Jonathan Dental Spa, LLC**<br>Discount for 2nd service at same address | $-112.50 | 1 | $-112.50 |
| **Jonathan Dental Spa, LLC**<br>Discount for 2nd service at same address | $-37.50 | 1 | $-37.50 |

| | |
|---|---|
| **TOTAL:** | **$150.00** |
| **PAID:** | **$150.00** |
| **BALANCE:** | **$0.00** |

# Certificate of Service

I hereby certify that on Monday, July 13, 2020 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Jonathan Dental Spa, LLC service method: First Class Mail

Abenaim,Jonathan,M, service method: First Class Mail

Signature: /s/ Quinn Robert Eaton (Bar Number: 26318)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200002371
Transaction ID: 0011369028
Filing Date: 07/29/2020 05:09:25 PM CDT

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| MED-DEN FUNDING, LLC, | ) | Case No. CI 20-2371 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED NOTICE OF HEARING** |
| | ) | |
| JONATHAN M. ABENAIM; JONATHAN | ) | |
| DENTAL SPA AT THE CENTER FOR | ) | |
| COSMETIC & IMPLANT DENTISTRY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

You are hereby notified that Plaintiff, Med-Den Funding, LLC, d/b/a Proceed Finance's ("Proceed Finance"), Motion for Temporary Injunction will be heard before the Honorable Susan Strong, via telephonic hearing with the Court to call the Parties, on the 6th day of August 2020, at 10:00 a.m., or as soon thereafter as counsel may be heard.  Defendants must contact the Court to provide contact information if they plan to attend.

Dated: July 29, 2020.

MED-DEN FUNDING, LLC,
Plaintiff

By: /s/  *Quinn R. Eaton*
    Marnie A. Jensen (#22380)
    David A. Lopez (#24947)
    Quinn R. Eaton (#26318)
    HUSCH BLACKWELL LLP
    13330 California St., Ste. 200
    Omaha, NE  68154
    Telephone: (402) 964-5000
    Facsimile: (402) 964-5050
    marnie.jensen@huschblackwell.com
    dave.lopez@huschblackwell.com
    quinn.eaton@huschblackwell.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing was sent via U.S. Mail, postage prepaid, this 29th day of July 2020, to the following:

      Jonathan M. Abenaim
      Jonathan Dental Spa, LLC
      1111 Goffle Road
      Hawthorne, NJ 07506

                                     */s/ Quinn R. Eaton*

HB: 4849-2345-9013.1

# Certificate of Service

I hereby certify that on Thursday, July 30, 2020 I provided a true and correct copy of the Amended Notice of Hearing to the following:

Jonathan Dental Spa, LLC service method: First Class Mail

Abenaim,Jonathan,M, service method: First Class Mail

Signature: /s/ Quinn Robert Eaton (Bar Number: 26318)